236 So.2d 687

Maudine D. Neese CONWAY

v.

Francis J. ANDREWS et al.

I Div. 468.

Supreme Court of Alabama.

May 28, 1970.

Rehearing Denied July 2, 1970.

Gordon & House, Don Conway, Mobile, for appellant.

Coley & Coley, Mobile, for appellees.

MERRILL, Justice.

This is an appeal from a decree in equity setting aside the foreclosure of a mortgage and ordering appellant to release certain realty from a mortgage.

In 1955, Gulf Development Company (hereinafter referred to as Gulf) approached one Otto Neese and proposed that he purchase a plot of unimproved land in Mobile County and sell it to Gulf. Gulf indicated that it planned to turn this land into a subdivision by improving the lots and selling lots and houses. Neese had had some previous business dealings with the president of Gulf, E. N. Merriwether. Neese purchased the property in the name of his daughter, Mrs. Conway, for about $75,000.00 and sold the land to Gulf for $90,000.00.

As consideration for the sale, Gulf gave Mrs. Conway a note for $90,000.00 bearing interest at 6%. Mrs. Conway also took a mortgage upon the property and the mortgage was duly recorded. Payments on the note were to be $500.00 per month. The mortgage provided that the mortgagee would release individual lots from the mortgage upon the payment of a certain sum of money, later agreed by the parties to be $1,200.00, on the lots with which we are concerned. Gulf never made a monthly payment on the note but paid about $60,000.00 for releases on 47 lots. Thereafter, Gulf's business activity in developing the lots apparently ceased, leaving 31 vacant lots in a second phase of the development and Lot 8 in the first phase of the

development all unreleased and still subject to the mortgage.

Complainant Andrews bought the house constructed by Gulf on Lot 8 of Phase I in 1957 and has lived there since that time. He paid a total of about $35,000.00 for the house and lot. Gulf gave Andrews a warranty deed on this property. Andrews considered having the title searched but never got around to it.

In 1965, after it became clear that she could not collect the balance due on Gulf's note, Mrs. Conway decided to foreclose. She learned through her husband, who acted as her agent, that Lot 8 contained a house and that Andrews had been paying taxes on the property since 1957. Pursuant to the power of sale provision in the mortgage, Mrs. Conway published four weekly advertisements of foreclosure in a Mobile newspaper and then sold the 32 parcels at public auction. She submitted the highest bid and bought the property for $50,000.00.

Andrews lived alone on Lot 8. His job required frequent long business trips lasting several weeks. He apparently left the city on such a trip before the first advertisement was run and returned after the sale had been completed. Mrs. Conway lived in the same subdivision about a block from Andrews but did not know him. She made no effort to inform him of the impending sale of his house and lot.

After the sale of the property that secured Gulf's note, Mrs. Conway brought a statutory ejectment suit against Andrews and Gulf. Andrews filed a declaratory judgment petition in equity, seeking a declaration of his rights in the property. He then moved for a transfer of Mrs. Conway's ejectment suit to the equity side of the court and for a consolidation of that transferred case with his declaratory judgment action. The court transferred the law case to equity and later consolidated it with the declaratory judgment action.

The trial court set aside the foreclosure under the power of sale contained in the mortgage and ordered Mrs. Conway to release Lot 8 from her mortgage upon the payment to her by Andrews of $1,200.00. The court found that (1) Mrs. Conway and Gulf entered into a plan or scheme for the cooperative development of the subdivision with Mrs. Conway to provide the funds to acquire the land and Gulf to improve and promote the sale of subdivision lots; (2) that Gulf misapplied the proceeds of the sale of Lot 8 by not paying the $1,200.00 to Mrs. Conway for a release of the lot and that Mrs. Conway deliberately failed to inform Andrews of this misapplication or that she had not released the lot, although she knew that Andrews had bought the lot; (3) that, although the lots were advertised for sale in individual parcels, the property was offered at the auction en bloc and that an en bloc sale of the lots was deliberately calculated to unduly hamper the right of redemption of complainant; (4) that the conduct of Mrs. Conway and her agents in refraining from calling Andrews' attention to the existence of the lien upon his home and making misrepresentations about the existence of the lien to a neighbor of Andrews' was deliberately calculated to lull him into a "sense of security, to the end that he should not be afforded a timely opportunity to exercise his legal and equitable rights in the premises, and to insure that he not be afforded any knowledge of, or opportunity to attend or bid at the foreclosure sale of said mortgage"; (5) that Mrs. Conway and her agents engaged in conduct deliberately calculated to conceal from complainant and prevent his discovery of the lien, to the end that he should not be afforded a timely opportunity to exercise his legal and equitable rights in the premises; (6) that Mrs. Conway's failure to inform Andrews that she had not been paid for the release of his lot was for the deliberate purpose and end that she be afforded an opportunity of unjust enrichment by the acquisition of Andrews' improvements to the lot by foreclosure of her mortgage lien, should Gulf fail to pay off its note; and (7) that the respondent's exercise of her power of sale

constituted a perversion of the power to a purpose foreign to its intendment and that the sale was "fraught with ill motive, fraud and oppression."

Appellant argues that her demurrer to appellee Andrews' motion to transfer appellant's ejectment action from law to equity should have been sustained. She says that the motion to transfer was not verified by affidavit as required by Tit. 13, § 153, and that the motion did not assert the equitable right sought to be protected with adequate precision. She also assigns this lack of precision as support for the proposition that the trial court erred in granting the motion to transfer.

■■ Appellant's demurrer to the motion did not raise the point that the motion was unverified. A demurrer is properly overruled where the motion is not subject to any of the grounds stated, even though it might be subject to demurrer on some other ground. Bank of Cottonwood v. Hood, 227 Ala. 237, 149 So. 676; Ala.Dig., Pleading, ☞216(3). Thus, the trial court did not err in overruling appellant's demurrer on this issue.

■ Also, we do not agree with appellant that the trial court was left without "rule, compass or guide" to determine whether or not the averments in appellee's motion to transfer, relating to his equitable defense, were sufficient. Appellee's motion set forth the case number of his petition on the equity side of the court which, by the time of the filing of appellee's last motion to transfer, had been amended to show his equitable defenses. The motion specifically referred to the petition in equity and the equitable defenses contained therein. We, therefore, do not think that the trial court erred in finding that there existed in the case an equitable right which could not be disposed of on the law side of the court.

■ Appellant next argues that the trial court's consolidation of Andrews' original equity suit with Mrs. Conway's transferred ejectment suit was improper because consolidation could only result in confusion and complication due to different actions. However, the trial court's exercise of discretion was not error.

■ Upon transfer of the ejectment suit to equity, at Andrews' request, he became the complainant and had to file a bill in equity which became the initial pleading in that case. Tit. 13, § 154, Code 1940; Cornelius v. Moore, 208 Ala. 237, 94 So. 57. Thus, Andrews was complainant in both equity cases and Mrs. Conway was respondent in both cases, so that the alignment of parties was not changed by consolidation. Similarly, the two actions in equity were identical after transfer as is shown by the complaint in the two suits. Finally, Mrs. Conway's ejectment action dealt with Lot 8 plus 31 other parcels of vacant land and Andrews' original bill in equity asked the court to set aside the mortgage sale of Lot 8 and the other 31 parcels. Thus, the subject matter of the two bills was identical. And the record of the hearing on the consolidated bills shows that consolidation added no facts, issues or parties to Mrs. Conway's transferred suit that would not have been present had consolidation not been ordered.

Appellant begins her argument in brief with the following sentence: "The essence of Appellant's argument is that there is no Equity in this case." She argues that the court erred in overruling her demurrer to appellee's bill. Appellant contends that the bill contains one aspect with six alternative averments. Appellee contends that his bill has six aspects. We are not sure that we can identify six aspects of the bill, but we can identify more than one aspect.

■ The demurrer to the bill was addressed to the bill as a whole, and when so, if any aspect of the bill states a ground for equitable relief, the demurrer should be overruled. Taylor v. Jones, 280 Ala. 329, 194 So.2d 80; Boyett's, Inc. v. Gross, 276 Ala. 452, 163 So.2d 610.

■ Without analyzing all the averments of the bill, we think one aspect clearly contained equity. This was the contention that the foreclosure should be set aside because the foreclosure sale had been conducted en bloc instead of by contiguous parcels and that such a sale hindered appellee's right to redeem and that the mortgagee had thereby abused the trust duty owed to the mortgagor and his grantees.

■ The case of Kelly v. Carmichael, 217 Ala. 534, 117 So. 67, is authority for the propositions that where the mortgage contemplates a subdivision of the property, as here, (1) the power of sale in the mortgage "is quickened with an element of trust"; (2) the rights, including the right to redeem part of the property without redeeming all, "inures to the benefit of a party who has acquired rights in subordination to the mortgage by a conveyance from the debtor"; and (3) that the reason for disfavoring en bloc sales is that such sale precludes a redemption of a separate part of the property taken.

■ In order to attack a sale en bloc in equity, the mortgagor, or his grantees must show that the trust incident to the exercise of the power of sale in the mortgage has been abused and that he has suffered detriment in the undue sacrifice of the property, or that his right of redemption has been unduly hampered. Rudisill v. Buckner, 244 Ala. 653, 15 So.2d 333, and cases there cited. Appellee met these requirements in his bill.

■ In brief, appellant makes several arguments in relation to appellee's allegation in the bill that the property was improperly sold en bloc. These arguments are based on the evidence produced at the hearing. Since allegations in a bill are taken as true on demurrer, Titus v. Nieheiser, 269 Ala. 493, 114 So.2d 242, appellant's arguments based on testimony at the hearing are inapt on the question of whether the bill has equity.

[13, 14] Appellant next argues that her demurrer to Andrews' bill should have been sustained because it specifically pointed out that she had never signed the mortgage attached as an exhibit to the bill, and there was no averment that she signed any written promise to release any property. It is generally acknowledged in Alabama that the Statute of Frauds may be waived by an affirmative act showing intention to affirm the contract and bringing an action based on the unsigned document is such an affirmative act. Hooper v. Reed, 211 Ala. 451, 100 So. 875. Appellee's bill alleges that Mrs. Conway wrote him a letter stating that she had foreclosed the mortgage at issue here. The bill also alleges that Mrs. Conway did in fact attempt to foreclose the mortgage by exercising her power of sale. Thus, the trial court was justified in deciding that appellee had adequately alleged a waiver of the Statute of Frauds by Mrs. Conway. We note that the record before the lower court at the time it overruled this demurrer showed that Mrs. Conway had instituted a statutory ejectment suit based upon this mortgage and that, at the hearing, Mrs. Conway made no effort to deny the validity of the mortgage and she introduced testimony that her agents had executed 47 releases under the mortgage.

■ ■ Appellant next argues that the trial court erred in entering its final decree. She argues that an auctioneer's deed is entitled to a presumption of validity. However, after a decree based on ore tenus evidence presented to the trial court, this court must see clearly that the lower court was plainly wrong before it will reverse the lower court's findings. Hair v. Beall, 274 Ala. 699, 151 So.2d 613. Appellant contends that no facts were presented justifying the trial court's action and suggests that the normal presumption in favor of the findings of the equity court does not apply to the court's application of the law to the facts. We believe, however, that the lower court's finding that the presumption accompanying the auctioneer's deed

was overcome by the showing made by the appellee was not plainly wrong and that the lower court's application of the law to the facts was not erroneous.

Appellee presented several theories to the court in support of his request that the foreclosure be set aside and specific performance of the release clause be ordered. The trial court made several findings as a basis for its decree. We consider only one theory and finding made by the court since we think that it alone was sufficient to sustain the decree.

 The lower court found that appellant engaged in conduct "deliberately calculated to conceal from the Complainant, and prevent the discovery of the existence of a mortgage lien upon his home, to the end that he should not be afforded a timely opportunity to exercise his legal and equitable rights in the premises, * * *." We think that the trial court was saying that appellant was aware that appellee had a right under the mortgage to buy a release of Lot 8 and that appellant's purpose in foreclosing on Lot 8, along with the other lots, was to terminate that right so that appellant could acquire the house and lot for herself. There was evidence to support such a finding. Appellant's husband and agent admitted that appellant did not attempt to give actual notice of the foreclosure to Mr. Andrews because of the fear that Mr. Andrews would try to buy a release of his lot. And there was evidence that appellant had routinely given such releases in the past. We said in Collins v. Thompson, 259 Ala. 82, 65 So.2d 491, concerning the exercise of a power of sale by the mortgagee:

"* * * If in any case it is attempted to pervert the power from its legitimate purpose and to use it for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself, a court of equity will enjoin a sale or will set it aside if made. Wittmeier v. Tidwell, 147 Ala. 354, 40 So. 963, and authorities there cited. * * *"

 We next consider appellant's arguments concerning appellee's right to purchase a release of Lot 8. Even though Mrs. Conway's agreement to sell releases was made with Gulf Development, appellee had the same right to a release as Gulf had. As we said in Title Insurance Co. v. Cowan Lumber Co., 226 Ala. 485, 147 So. 665:

"It seems well settled by the weight of authority that an agreement in a mortgage to release certain parts of the property mortgaged in case of a sale of same by the mortgagor and the payment to the mortgagee of a fixed sum therefor is not only for the benefit of the mortgagor but his assigns and grantees as well, and whether so provided in the mortgage or not. It is also well settled that the right to release does not terminate with the maturity of the debt secured, but extends to the time of the foreclosure of the mortgage. * * *"

 Appellant contends that appellee had no right to purchase a release of Lot 8 because the appellant's obligation to release lots was conditioned upon the mortgage payments being current, whereas the mortgage had been in default for several years. The mortgage reads rather oddly. The release clause, which is in the form of a complete sentence, is inserted in the midst of a series of clauses joined by semicolons. It is set apart from what comes before and after it by several lines of white space and generally does not appear to be related to what precedes and follows it. In addition, the trial court found that the mortgagee had never held the mortgagor to the payment schedule stipulated in the mortgage and that the mortgagor had never made a payment under the mortgage. Instead, all payments to the mortgagee were purchases of releases on individual lots. The construction placed on a contract by the parties and practiced by them will ordinarily be accepted by the court. Hill v. Davis, 272 Ala. 166, 130 So.2d 39, and cases there cited. In light of the findings we have recounted above, it appears that the parties to the

contract never regarded payment currency as a condition to the execution of a release and the lower court was not in error in conforming its order to the construction placed upon the contract by the parties.

■■ Appellant next argues that if the mortgage be read as not requiring compliance with the alleged condition of payment currency, then this is evidence that the contract is not certain enough to permit specific performance. Our rule is that a contract will not be specifically enforced unless it is certain in its terms, or can be made certain under the rules of law and evidence. Rushton v. McKee & Co., 201 Ala. 49, 77 So. 343. As we have indicated, the contract was made certain under the rules of law and evidence and the lower court was not in error in ordering specific performance.

All of appellant's other assignments of error present issues already discussed in this opinion or issues which would not change the outcome of this case in light of what we have said. We find no reversible error.

This case was originally assigned to another member of the court and was reassigned to the author of this opinion on March 25, 1970.

Affirmed.

LIVINGSTON, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.