Kim Rosser and Lacey Rosser, a minor, suing by and through Kim Rosser, her mother and next friend (hereinafter referred to collectively as "Rosser"), appeal from a summary judgment entered in favor of AAMCO Transmissions, Inc., in an action brought by Rosser against AAMCO in the Jefferson Circuit Court. Rosser makes only two complaints about the summary judgment: (1) that the trial judge exceeded his discretion in denying her request made under Rule 56(f), Ala. R. Civ. P., to continue the hearing scheduled on the summary-judgment motion to allow her to take certain depositions in order to be able to oppose the motion, and (2) that the trial judge erred in entering a summary judgment on Rosser's "express warranty claim," stated as count II of the complaint, because, Rosser argues, the summary-judgment motion addressed only "the agency aspect of the case" presented in count I of the complaint. We affirm.
Because Rosser's action had been pending for over three and one-half years when the trial court entered the summary judgment in favor of AAMCO, there is an extensive procedural record, numerous features of which Rosser and AAMCO respectively trace and argue, and all of which we have independently analyzed to determine the merits of Rosser's first contention.
On March 2, 1994, James Swift, who operated a business known as Swift Enterprises, Inc. ("Enterprises"), entered into a franchise agreement with AAMCO. In December 1999, Sylvia Milstead, Kim's mother and Lacey's grandmother, purchased a 1997 Ford Taurus automobile from Heart of Dixie Nissan, Inc. ("Dixie Nissan"), an automobile dealership. Sometime shortly before January 6, 2000, Milstead returned the car to Dixie Nissan because of mechanical problems, and Dixie Nissan, in turn, took it to Enterprises for diagnostic service and repair. After the repairs were completed, Enterprises returned the automobile to Dixie Nissan, which then returned it to Milstead, who soon brought it back to Dixie Nissan because of continuing problems. Dixie Nissan returned the car to Enterprises on January 20, and it performed some further work and released the car to Dixie Nissan on January 31, 2000. The record reflects that by February 2000 Swift had ceased operating Enterprises as an AAMCO transmission shop. *Page 296 
On April 29, 2000, Ashley Rosser, another of Kim Rosser's daughters, was driving the Ford Taurus and Lacey Rosser was a passenger; while Ashley was driving, the car experienced a malfunction that caused it to collide with an automobile occupied by Bryan, Sherry, and Christopher Maddox.
On January 11, 2001, Rosser filed in the Birmingham Division of the Jefferson Circuit Court the action to which this appeal relates, against Swift, Enterprises, and AAMCO ("Rosser I"). Rosser alleged that Swift and Enterprises had negligently or wantonly failed properly to repair the automobile or to advise that the mechanical problem had not been repaired and that AAMCO was liable because Enterprises was its apparent agent. Rosser filed with the complaint a notice of the taking of Swift's deposition and interrogatories and document production requests directed to AAMCO, including requests relating specifically to the issue of Enterprises' apparent authority. AAMCO answered the complaint, specifically denying any agency relationship, apparent or otherwise. On or about March 9, 2001, AAMCO responded to the request for document production.
Swift and Enterprises filed petitions in bankruptcy on June 29, 2000; they filed a suggestion of bankruptcy in the trial court on March 28, 2001. Consequently, the trial court on April 6, 2001, ordered that Swift and Enterprises were "separated from the case pending the outcome of Bankruptcy proceedings," but that "all liability and fact discovery, including depositions, on the subject of agency of defendant, AAMCO Transmissions, Inc., shall be complete by pre-trial conference," which was set for August 30. Rosser rescheduled Swift's deposition for May 21, but canceled it without explanation on May 18, advising AAMCO that the deposition would be rescheduled at a later date. Rosser was allowed to amend her complaint to eliminate Swift and Enterprises as defendants but to allege that Enterprises had been AAMCO's "actual and apparent agent" and to allege that AAMCO had expressly warranted the transmission and repair work but had breached its express warranties.
On August 9, 2001, AAMCO moved the court to extend the August 30 discovery deadline for 90 days in consideration of the impediment to discovery posed by Swift's bankruptcy proceeding. By a "status conference order" entered on August 30, the trial court extended the deadline for completing all liability and fact discovery, including depositions, to April 30, 2002.
On April 19, 2002, Rosser sued Dixie Nissan and Ford Motor Company in the Bessemer Division of the Jefferson Circuit Court, seeking recovery for the injuries Lacey sustained in the same automobile accident ("Rosser II"). In April 2002 the Maddoxes likewise sued Dixie Nissan, Ford, and AAMCO in the Bessemer Division of the Jefferson Circuit Court.
On April 25, 2002, the trial court handling Rosser I entered another status conference order, directing that all discovery inRosser I be completed by September 1 and scheduling a pretrial conference for October 25. On May 24, 2002, Rosser deposed AAMCO employee Roland Shine, in response to a deposition notice requiring AAMCO to produce its employee who "most frequently visited Swift Enterprises during the past two years." At Rosser's request, the trial court again extended the discovery deadline inRosser I until, and for reconsideration at, the pretrial conference scheduled for October 25. On that date the court conducted a hearing and ordered that all depositions that had been previously noticed were to be completed by December 10. A status conference was set for January 22, 2003. *Page 297 
Rosser filed a motion on October 29, 2002, seeking to haveRosser I, Rosser II, and the case filed by the Maddoxes consolidated for pretrial discovery, advising that "the Maddox plaintiff has a serious brain injury that justifies the expert witness fees for prosecuting a case like this and it is for that reason that [Rosser] chose to file the separate suit in Bessemer." The trial court ordered consolidated discovery.
At the scheduled January 22, 2003, status conference in RosserI, the trial judge ordered, among other things, that the depositions of the defendants were to be taken by March 21, 2003. Rosser noticed depositions of certain AAMCO personnel for March 20 and noticed Rule 30(b)(6), Ala. R. Civ. P., depositions for other AAMCO representatives for April 9. All of those depositions were later postponed at Rosser's request; they were never rescheduled. On March 31, 2003, at the request of "the Maddox plaintiffs," the Rosser I trial court granted all plaintiffs until May 16, 2003, to take the depositions of the defendants.
On April 14, the judge handling Rosser II in the Bessemer Division ordered that case transferred to the Birmingham Division of the Jefferson Circuit Court, where Rosser I was pending; Rosser then moved the Rosser I trial court to allow her to dismiss Rosser I, without prejudice, advising that she expected to refile it in the Bessemer Division.
On May 5, 2003, the Rosser I judge placed Rosser I on the court's administrative docket until December 1, 2003, with a status conference to be scheduled thereafter, having been advised (1) that the judge handling Rosser II had been asked by Rosser to reconsider his ruling transferring that action to the Birmingham Division; (2) that the liability carrier for Dixie Nissan was in receivership, effecting a stay as to litigation affecting that insurance carrier (not applicable to Rosser I); and (3) that Rosser had moved to dismiss Rosser I. In AAMCO's opposition to Rosser's proposed dismissal without prejudice ofRosser I, AAMCO objected to any such dismissal and refiling in the Bessemer Division because Rosser I had been pending for almost two and a half years and because, AAMCO said, it had incurred attorney fees of $39,024.20 and expenses of $3,244.22 defending that case. AAMCO stated that it had responded to all of Rosser's discovery, having produced thousands of pages of documents and other items in response to three sequential document production requests by Rosser.
On December 2, 2003, the circuit judge handling Rosser I
entered an order consolidating it and Rosser II, which by then had been transferred from the Bessemer Division; a status conference was set for January 12, 2004.
The record does not reflect, and Rosser does not discuss, what resulted at the January 12 status conference. On January 16, 2004, however, AAMCO filed its motion for a summary judgment with supporting materials and a supporting brief. A hearing was set for February 6, but, on motion of Rosser, it was continued to February 25.
On February 20 Rosser filed her "Response under Rule 56(f)[, Ala. R. Civ. P.,] in Opposition" to the motion for a summary judgment, supported by the affidavit of Rosser's attorney. Rule 56(f), Ala. R. Civ. P., provides:
 "(f) When Evidentiary Matter Is Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be *Page 298 
had or may make such other order as is just."
Among the materials with which AAMCO had supported its motion for a summary judgment were the affidavits of Swift and Michael J. Pekula, director of consumer affairs for AAMCO. Together, their affidavits authenticated a copy of the franchise agreement and confirmed that Swift had honored the requirement of the agreement that he not hold himself out to anyone as an agent or employee of, or as acting in any way for, AAMCO and that, again pursuant to the agreement, Swift was fully responsible for, and in control of, the day-to-day operations of his repair business. The affidavits comprehensively reviewed all pertinent provisions of the franchise agreement to explain the exact contractual relationship between Swift and AAMCO, acknowledging those areas in which AAMCO had oversight or authority to exert some control but pointing out how Swift exercised overall independent judgment and authority in operating his business. The affidavits established that the only time AAMCO representatives appeared at the premises of Enterprises was for unannounced inspection visits, roughly on an annual basis, for the sole purpose of monitoring Swift's compliance with the franchise agreement.
In her Rule 56(f) response, Rosser explained that only four depositions had been taken in the case and that "[t]he plaintiff in Maddox has a severe brain injury. Accordingly, the Rosser plaintiffs want counsel for Maddox to take the lead." Rosser further explained that she had moved to dismiss Rosser I "so that the Maddox case can take the lead." Rosser stated that if her proposed dismissal of Rosser I was not allowed, AAMCO's summary-judgment motion should be continued until Rosser could take the depositions of Swift and Pekula. The attached affidavit of Rosser's attorney stated that the depositions of Swift and Pekula were necessary because, until they were taken, Rosser
 "will not even know the names of all possible witnesses who may be able to testify to the indicia of apparent authority. The discovery concerning whether any of the indicia of agency are present must be complete before the plaintiff can present by affidavit facts essential to justify the plaintiffs [sic] opposition to the Motion for Summary Judgment."
On February 24, AAMCO replied to Rosser's Rule 56(f) response, recounting for the court the pertinent procedural history ofRosser I, which had been pending for over three years. In particular, AAMCO pointed out that Rosser had twice noticed Swift's deposition, only to cancel the deposition and forgo any further effort to take it; that AAMCO had answered numerous interrogatories propounded to it by Rosser, but none of those interrogatories inquired into the agency relationship between Enterprises and AAMCO; that AAMCO had provided over 1,500 pages of documents in response to 43 individual production requests by Rosser, many of which documents were probative of the agency issue involved and that all of the documents AAMCO had submitted in support of its summary-judgment motion had previously been produced to Rosser; that Rosser had deposed Roland Shine; that Rosser had noticed additional depositions of other AAMCO personnel only to postpone them and never reschedule them; and that Pekula, tendered only as a representative of AAMCO having general knowledge of the company's dealings with its franchisees, had been available for deposition as a representative of AAMCO under Rule 30(b)(6), Ala. R. Civ. P., from the beginning of the case.
On February 26, 2004, the trial judge entered an order in which he noted that *Page 299 
during the lengthy pendency of the case several scheduling orders had been entered, that the parties had in fact engaged in discovery, and that Rosser had been afforded "a full and fair opportunity to ascertain the facts pertaining to the agency theories" she asserted against AAMCO. The court noted further that "AAMCO has already expended significant resources defending itself, and deserves to be heard on its summary judgment motion," with the result that "the court is unwilling to let the matter drag on." Rosser's request for additional time to conduct discovery to oppose the summary-judgment motion was denied, but the hearing date on the motion was reset to March 12, 2004. On that date Rosser filed her "Response in Opposition" to AAMCO's motion for a summary judgment, supporting it with numerous documents and the affidavit of Russell Milstead.
Mr. Milstead identified himself as a salesman at Dixie Nissan and the uncle of Lacey Rosser. He stated that he had accompanied the sales manager of Dixie Nissan, Curtis Osborne, when Osborne delivered the automobile to Enterprises on both occasions in January 2000, and that although he saw AAMCO signs on the premises, he saw no signs declaring the business to be independently owned and operated. It was his pre-existing belief that "all AAMCO's were owned by the corporation that did the advertising (AA, Honk, Honk, MCO)" and that he "relied upon the television advertising as the basis for [his] belief" that AAMCO owned all AAMCO repair shops. Further, he stated, "I did not receive a repair order form or any other form that warned me of Swift's independent ownership and operation of the AAMCO shop."
After further procedural jockeying between the parties, involving numerous court filings and an interim order by the trial court, none of which require discussion in light of the specific nature of the two issues Rosser raises on appeal, the trial court entered a detailed final order in Rosser I on August 19, 2004, entering a summary judgment in favor of AAMCO.[1] The court noted that in Malmberg v. AmericanHonda Motor Co., 644 So.2d 888, 890 (Ala. 1994), this Court had explained the initial burden of proof to be carried by a defendant moving for a summary judgment based on a denial of agency, and how the burden shifted to the nonmovant plaintiff if the defendant made the requisite prima facie showing:
 "When a defendant's liability is to be based on agency, agency may not be presumed; rather, when on a motion for summary judgment a defendant has made a prima facie showing that there was no agency relationship, the party asserting agency has the burden of presenting substantial evidence of the alleged agency. Carlton v. Alabama Dairy Queen, Inc., 529 So.2d 921 (Ala. 1988); Wood v. Shell Oil Co., 495 So.2d 1034 (Ala. 1986). The test to be applied in determining whether there existed an agency relationship based on actual authority is whether the alleged principal exercised a right of control over the manner of the alleged agent's performance. Control must be proven; and proof of control requires more than proof of a mere right to determine if the person claimed to be an agent is conforming to the requirements of a contract. Id."
644 So.2d at 890. Quoting further from Malmberg, the court noted: *Page 300 
 "`The doctrine of apparent authority is based upon the actions of the principal, not those of the agent; it is based upon the principal's holding the agent out to a third party as having the authority upon which he acts, not upon what one thinks an agent's authority might be or what the agent holds out his authority to be.'"
Trial court's order, quoting Malmberg, 644 So.2d at 891.
The court concluded that AAMCO had met its initial burden of showing that the material facts relating to the claims of actual agency and apparent agency were undisputed and that there was no agency relationship, that the burden had then shifted to Rosser, and that Rosser had failed to meet the burden of showing some genuine issue of material fact on that score. The court found from the parties' respective submissions that there was no evidence indicating that AAMCO exerted supervisory control over Enterprises' day-to-day operations; rather, Swift retained full managerial responsibility and authority for his company's operations, and he was in full control of the day-to-day work of his repair shop. Relying on caselaw, the court explained that the mere display of AAMCO's logos on Enterprises' premises did not mean that AAMCO held Enterprises out to the public as its agent; the court pointed out that the repair order form used by Enterprises explicitly stated that customers were dealing with an independently owned and operated repair shop. The record contains the repair order forms for the two times Enterprises worked on the Ford Taurus automobile in January 2000, and we note that each clearly identifies Enterprises as "an independently owned and operated" repair center. Curtis Osborne signed each repair order form on behalf of Dixie Nissan when he retrieved the automobile, expressly acknowledging his receipt of a copy of the form.
 I. Standard of Review
Our standard of review of a summary judgment is de novo, and the judgment is to be affirmed only when the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Kennedy v. Western Sizzlin Corp., 857 So.2d 71,76-77 (Ala. 2003).
As to the denial of a continuance under Rule 56(f), Ala. R. Civ. P.:
 "[T]he law is clear that a request for a continuance pursuant to the provisions of Rule 56(f), Ala. R. Civ. P., [is] within the sound discretion of the trial court, and that court's decision not to permit discovery should be reversed on appeal only if the court abused its discretion."
Crowl v. Kayo Oil Co., 848 So.2d 930, 941 (Ala. 2002).
 II. Denial of the Requested Rule 56(f) Continuance
If the party opposing a summary judgment properly establishes before the trial court that unresponded-to discovery is crucial to the party's case, it is error for the trial judge to enter a summary judgment before the discovery has been supplied. Noblev. McManus, 504 So.2d 248 (Ala. 1987). Rosser does not contend that AAMCO has failed to respond to any discovery requests. "InHerring v. Cunningham, 507 So.2d 1324, 1325 (Ala. 1987), this Court, reviewing a ruling denying a motion for a continuance, held that the trial court had not exceeded its discretion and noted that those cases that have held that the trial court exceeded its discretion in not allowing the requested continuance have involved situations where the party moving for summary judgment `has failed or refused to provide information requested by the opposing party.'" Barry v. Drennen, 896 So.2d 430,431-32 (Ala. 2004) (footnote *Page 301 
omitted). Only rarely will an appellate court find that the trial court has exceeded its discretion in not allowing a requested continuance for the purpose of conducting further discovery.507 So.2d at 1325. The burden of showing that the results of pending, or timely and reasonably proposed, discovery would be crucial to the nonmoving party is upon that party, who can carry that burden by complying with Rule 56(f). McCullar v. Universal UnderwritersLife Ins. Co., 687 So.2d 156, 162 (Ala. 1996). In that regard, the nonmoving party has the burden of specifically informing the trial court why the discovery is significant to the party's effort to rebut the summary-judgment motion. Id.
Rosser's Rule 56(f) "response," filed February 20, 2004, stated that she needed to take the depositions of the parties who had submitted affidavits in support of AAMCO's summary-judgment motion because of the considerations stated in her attorney's affidavit, attached to her response. The pertinent text of that affidavit, as previously quoted, focused on the need to develop "the names of all possible witnesses who may be able to testify to the indicia of apparent authority." (Emphasis supplied.) The evidence was undisputed, however, that neither Sylvia Milstead, Kim Rosser, nor Lacey Rosser had advance notice that Dixie Nissan was taking the Ford Taurus to Enterprises. Rosser does not argue that Sylvia Milstead, Kim Rosser, or Lacey Rosser ever had any dealings with Enterprises, Swift, or AAMCO, or that any one of them ever visited the premises of Enterprises. "`"[T]he doctrine of apparent authority is based on the principal's holding the agent out to a third person as having the authority under which he acts,"'" and the doctrine "`"can be invoked by one who has been misled to his detriment."'" Northington v. Dairyland Ins.Co., 445 So.2d 283, 285 (Ala. 1984) (quoting Johnson v.Shenandoah Life Ins. Co., 291 Ala. 389, 394, 281 So.2d 636, 640
(1973), quoting other cases). "[T]he `authority' must be `apparent' to the complaining party and that party must have relied on the appearance of authority; he cannot rely on an appearance of authority that he was ignorant of." Watson v.Auto-Owners Ins. Co., 599 So.2d 1133, 1136 (Ala. 1992). As Justice Johnstone explained, concurring specially in part inKennedy, supra, 857 So.2d at 79, "[t]he validity of any person's claim that he or she has relied on apparent authority in an alleged agent depends in part on whether acts by the alleged principal reasonably foreseeably conveyed to the particularclaimant an appearance of agency in the alleged agent." Under the undisputed facts, neither Sylvia Milstead, nor Kim Rosser, nor Lacey Rosser could claim that Enterprises exhibited to her any "apparent" authority as an agent of AAMCO, and none of them could claim that she was misled to her detriment by any appearances that Enterprises was AAMCO's agent. Rather, Rosser has presented only the affidavit of Russell Milstead stating that, based on television advertising he had seen and on the presence of AAMCO signs on the premises of Enterprises, he believed that all AAMCO repair shops were owned by AAMCO. Although Mr. Milstead identified himself as Lacey Rosser's uncle, his two visits to Enterprises were apparently in his capacity as a salesman with Dixie Nissan; on both occasions he simply accompanied Curtis Osborne, the Dixie Nissan sales manager, in order to deliver the Ford Taurus automobile to Enterprises for repair. At no time in the trial court or in this Court has Rosser suggested that on those occasions Russell Milstead was acting as the agent for Sylvia Milstead, much less the agent of either Kim Rosser or Lacey Rosser; Rosser makes no claim that Mr. Milstead was *Page 302 
representing any party other than Dixie Nissan in assisting in the transport of the Taurus to Enterprises, and she does not argue that any belief Mr. Milstead had concerning the relationship between AAMCO and Enterprises should be imputed to Sylvia Milstead or to Kim or Lacey Rosser so as to allow them to claim some sort of derivative detrimental reliance.
Accordingly, even if Rosser had deposed Swift and Pekula to develop the names of witnesses who might "be able to testify to the indicia of apparent authority," that indicia would be irrelevant in light of the undisputed fact that Lacey Rosser, Kim Rosser, and Sylvia Milstead would have been ignorant of it. Thus, such evidence could not qualify as evidence "crucial" to the aspect of Rosser's case predicated upon the theory of apparent authority. Consequently, it cannot be said that the trial court exceeded its authority by denying Rosser the opportunity to depose Swift and Pekula in an attempt to develop information relating to possible indicia of Enterprises' apparent authority to act as AAMCO's agent.
The affidavit of Rosser's counsel submitted with Rosser's February 20, 2004, Rule 56(f) response would have led the trial judge reasonably to understand that the depositions were desired only for the purpose of possibly discovering "indicia of apparent authority." This impression would have been reinforced by a second affidavit of Rosser's attorney, filed with the court on July 13, 2004, which again advised the court of the need to depose Swift and Pekula to develop leads concerning "the indicia of apparent authority." As noted, Rosser, the party opposing summary judgment, had the burden of specifically informing the trial court why the discovery she sought would be significant to her effort to rebut the summary-judgment motion. McCullar, supra.
To the extent that Rosser's submissions could have alerted the trial court to the possibility that Rosser considered the depositions also necessary for the development of evidence relating to actual agency, we cannot find that the trial judge exceeded his discretion in denying a continuance, given the multiple opportunities available to Rosser over the long course of the pendency of this action, to depose Swift, to depose Pekula as a Rule 30(b)(6) witness, and to otherwise conduct discovery concerning actual agency. The trial judge was entitled to conclude from Rosser's own explanations in court filings that, at some point, Rosser had elected to hold off on discovery in the hope that "counsel for Maddox [would] take the lead." Given the significant expenditure of attorney fees and expenses by AAMCO over the long course of the litigation leading up to the filing of its summary-judgment motion, the trial court did not exceed its discretion in concluding, on February 26, 2004, that Rosser had had a "full and fair opportunity to ascertain the facts pertaining to the agency theories." Accordingly, we do not find that Rosser has demonstrated that the trial court exceeded its discretion in denying further discovery on the issue of actual agency.
 III. Summary Judgment as to the Express-Warranty Claim
Rosser asserts that the trial court erred procedurally when it entered a summary judgment as to all counts, effectively dismissing the entire case, because, Rosser contends, the motion for a summary judgment "only addressed the agency aspect of the case (Count I)" and "[t]he express warranty count (Count II) was not part of the summary judgment motion. . . ." (Rosser's brief, p. 26.) The record belies this assertion, however. AAMCO's summary-judgment motion does in fact address the *Page 303 
entire case. For example, the introductory paragraph of the motion asks for a summary judgment in AAMCO's favor, without any expressed limitation, and the concluding sentence of the motion states that AAMCO "requests judgment in its favor and that all claims against it be DISMISSED WITH PREJUDICE." (Capitalization in original.) Further, AAMCO asserted in the motion that it "did not provide a warranty on service work performed by Swift," but that "[t]he only warranties issued were issued by the independent franchisees" and that AAMCO "neither issued nor honored any warranties."
The warranty issued in connection with the repair of the Taurus automobile, as exhibited to AAMCO's motion in properly authenticated form, explicitly declared that it was the warranty of "the AAMCO Center issuing this Warranty," specifying at two different places that the issuer was an "independently owned and operated AAMCO Transmission Center." Rosser alleged in the amended complaint that "AAMCO breached its warranty when it gave Sylvia Milstead the 1997 Ford Taurus because the work that was done on said car, and the transmission and other parts installed in said car, was [sic] not free of defects." Rosser went on to allege more specifically that "[w]hen Swift Enterprises, Inc., the actual and apparent agent of AAMCO Transmissions, Inc., failed to properly repair the transmission in the Rossers' vehicle so that it could perform as warranted, AAMCO breached its express warranty."
AAMCO, in its properly supported motion for a summary judgment, made a prima facie showing that Enterprises was neither its actual nor its apparent agent and that the express warranty issued was solely that of Enterprises. Thus, AAMCO's motion clearly did address the express-warranty count and made it a part of the summary-judgment motion. Rosser's failure to sustain her claims of error with respect to the summary judgment on the issues of apparent and actual agency necessarily and fatally undercut her claim that AAMCO breached an express warranty through the acts and omissions of Enterprises as AAMCO's actual and apparent agent. Accordingly, we conclude that the summary judgment covered both counts of the complaint.
 Conclusion
Because Rosser failed to establish reversible error with respect to the only two issues she argues on appeal, we affirm the summary judgment.
AFFIRMED.
NABERS, C.J., and SEE, STUART, and BOLIN, JJ., concur.
[1] Upon remand from this Court, the trial court certified, pursuant to Rule 54(b), Ala. R. Civ. P., that there was no just reason for delay and that the summary judgment entered in RosserI was a final judgment.