B.N. Muller III appeals from a summary judgment entered by the Chilton Circuit Court in favor of Linda S. Seeds and Chris Seeds. We reverse.
 I. Facts and Procedural History
This is the second time an appeal has been taken to this Court in this case. Like this appeal, the former appeal involved a summary judgment in the Seedses' favor and against Muller. In that appeal, this Court set forth the relevant procedural and factual history of the case:
 "Muller is a minority shareholder in Silver Point, Inc. (`Silver Point'), an Alabama corporation formed for the purpose of buying and selling real estate. In addition to his stock in Silver Point, Muller holds a mortgage on a 162-acre tract of land owned by Silver Point. Half of the stock in Silver Point is held by its president and chief executive officer, Berry Shirley, who primarily negotiated all sales of land sold by Silver Point.
 "The 162-acre tract owned by Silver Point is divided into six lots, and Silver Point was selling the lots.[1] As each lot *Page 915 
was sold, Muller would execute a release of the lot from the operation of his mortgage. At the time of this litigation, Lots 1, 2, 4, and 5 had been sold by Silver Point and released by Muller; Lots 3 and 6 remained subject to the mortgage. In early 2000, the Seedses, after negotiating with Shirley, entered into a sales contract to purchase Lot 3 from Silver Point. However, Muller refused to execute a release of Lot 3 upon its sale, writing on the sales contract, `Rejected-No Value.'
 "Silver Point, through Shirley, and the Seedses proceeded with the sale, notwithstanding Muller's refusal to release Lot 3 from the mortgage. The Seedses closed on the sale, paying $60,350 for Lot 3, of which $12,500 was paid to Silver Point. Of the $12,500, $11,000 was tendered by check to Muller, who alleges that he took the check `as evidence' but that he never cashed it or deposited it.
 "Subsequent to the closing, Muller informed Shirley and the Seedses that he had never released Lot 3 from his mortgage, and he requested that possession of Lot 3 be surrendered to him. When neither Shirley nor the Seedses complied with Muller's request, the mortgage being in default, Muller proceeded to foreclose upon the property; pursuant to the power-of-sale provision in his mortgage, he conducted a foreclosure sale, at which he purchased the property that had not been released from the mortgage — Lots 3 and 6 — as the highest bidder. The Seedses refused to surrender possession. Muller then timely filed an ejectment action in the Chilton Circuit Court, seeking to have that court eject the Seedses from Lot 3. Muller's complaint also purported to seek relief in rem against Lot 3.
 "The Seedses timely filed an answer and a counterclaim against Muller, alleging breach of contract and wrongful foreclosure. Their answer asserted 10 I defenses, some of which were affirmative defenses, such as payment. The Seedses, however, never explained exactly what contract they were alleging in their counterclaim Muller had breached.
 "The Seedses filed a motion for a summary judgment on Muller's ejectment claim against them, which the trial court initially denied. Approximately one ' year later, however, after further discovery, the Seedses filed a renewed motion for a summary judgment, again only as to Muller's ejectment claim, which the trial court granted. The court, pursuant to Rule 54(b), Ala. R. Civ. P., certified `the summary judgment as a final judgement."
Muller v. Seeds, 919 So.2d 1174, 1176 (Ala. 2005) ("Muller I"). Muller appealed, and this Court reversed the summary judgment and remanded the case.
In Muller I, the Seedses argued that Muller had received sufficient proceeds from the sale of lot 3 to satisfy his lien on lot 3. This Court held that this argument was without merit because Muller's mortgage "contained no language providing that he would grant a release upon the, payment of any consideration." 919 So.2d at 1177.
The Seedses also argued in Muller I that Muller had authorized Shirley, the president of Silver Point, Inc., both to sell the lots and to grant partial releases from Muller's mortgage. This Court held that this argument also was without merit. The Court noted that the Seedses did not make this argument to the trial court, but, instead, had raised this argument for the first time on appeal. 919 So.2d at 1177. *Page 916 
Furthermore, it noted that the Seedses' evidence on this point, "a short colloquy from a deposition of a third party[,] when viewed in the light most favorable to Muller, as the nonmovant, merely establishe[d] that Muller authorized Shirley to handle transactions and quote prices with respect to those lots Muller had released from his mortgage." 919 So.2d at 1177.
Finally, this Court addressed the Seedses' argument that Muller's foreclosure was wrongful and was due to be set aside because the property had been sold at the foreclosure sale en masse, i.e., lots 3 and 6 had been sold together, rather than in individual parcels. The Court pointed out that, in previous cases, a court had set aside a mortgage-foreclosure sale only upon a pleading specifically requesting that relief.919 So.2d at 1178. It noted that, although the Seedses had requested this relief in a counterclaim, their summary-judgment motion was directed only to Muller's ejectment claim; the Seedses' counterclaim had "never been ruled upon and [was] not before this Court." 919 So.2d at 1178.
Following this Court's reversal of the summary judgment and remand to the trial court, the Seedses again sought a summary judgment. This time, they sought a summary judgment not only on Muller's ejectment claim, but also on their wrongful-foreclosure claim. They argued that Muller had authorized Shirley to sell lot 3 free and clear of his mortgage lien and that Muller's en masse sale of all the property covered by his mortgage — lot 3 and lot 6 — wrongfully hindered their right to redeem lot 3.
On March 3, 2006, the trial court granted the Seedses' motion for a summary judgment. The trial court entered the following judgment on the case-action-summary sheet:
 "The issue of Motion for Summary Judgment as filed by Defendant[s] Seeds[es], argument heard. There being no genuine issue of material fact and the Defendants Seeds[es] are entitled to a Summary Judgment on issue of setting aside the foreclosure and vesting title in Defendants on Lot # 3 Silver Point Subdivision. There being no just cause for delay. This is a final judgment."[2]
Muller appeals.
 II. Standard of Review
The standard of review that we applied in Muller I is equally applicable to the present appeal:
 "This Court reviews a summary judgment de novo. Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala. 2004). We seek to determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and has demonstrated *Page 917 
that the movant is entitled to a judgment as a matter of law. Turner, supra. In reviewing a summary judgment, this Court reviews the evidence in the light most favorable to the nonmovant. Turner, supra. Once the movant makes a prima facie showing that he is entitled to a summary judgment, the burden shifts to the nonmovant to produce `substantial evidence' creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Fla., 547 So.2d 870, 871 (Ala. 1989)."
Muller I, 919 So.2d at 1176-77.
 III. Analysis
Once again this Court is presented with the issue whether a genuine issue of fact exists as to Shirley's alleged authority to release Muller's mortgage lien on lot 3. This Court addressed that issue in the previous appeal, holding that the evidence upon which the Seedses relied, a portion of a deposition of a third party, when considered in the light most favorable to Muller, did not support a summary judgment in the Seedses' favor. Muller I, 919 So.2d at 1177. In the present appeal, the Seedses rely on the same portion of the same deposition of the same third party to again attempt to rebut Muller's argument that Shirley did not have the authority to release Muller's lien. This Court's conclusion in the previous appeal that this portion of the deposition does not form a basis on which to contend that Muller authorized Shirley to release his lien on lot 3 remains unchanged.
The Seedses further point out that the bylaws of Silver Point conferred on Shirley, as president, the power to "execute bonds, mortgages and other contracts." This provision does not demonstrate that Shirley had the power to do anything other than act on behalf Silver Point. Muller, not Silver Point, held the mortgage lien on lot 3. Silver Point's corporate bylaws did not permit Shirley to take actions on behalf of Muller as a separate individual.
The Seedses also argue, in further support of their argument that Shirley had the authority to release Muller's mortgage lien on lot 3, that Shirley had granted partial releases of Muller's mortgage lien on four of the six lots. The portions of the record on which they rely in making this statement, however, provide no support for this assertion.
The Seedses also contend that, even if the evidence upon which they rely does not support their contention that Muller conferred actual authority on Shirley to release Muller's mortgage lien on lot 3, "Muller is bound by the acts of Berry Shirley as they were done within the scope of Shirley'sapparent authority." This argument likewise does not find adequate support in the record. The Seedses have not cited any portion of the record demonstrating that any act of Muller conveyed to them an appearance of agency in Shirley; nor have they demonstrated that, before the closing, they relied on any facts that would convey such an appearance.[3] See Rosser v.AAMCO Transmissions, Inc., 923 So.2d 294, 301 (Ala. 2005) ("`[T]he "authority" must be "apparent" to the complaining party and that party must have relied on the appearance of authority; he *Page 918 
cannot rely on an appearance of authority that he was ignorant of.'"); Watson v. Auto-Owners Ins. Co.,599 So.2d 1133, 1136 (Ala. 1992) (A claimant "cannot rely on an appearance of authority that he was ignorant of."). Thus, this contention by the Seedses provides no basis for the affirmance of the trial court's judgment.
Finally, in response to Muller's argument that the en masse foreclosure sale was proper, the Seedses argue that that sale deprived them of the opportunity to redeem the lot they had purchased from Silver Point. As a result, they argue, the trial court properly set aside the foreclosure sale.
In Kelly v. Carmichael, 217 Ala. 534, 117 So. 67
(1928), this Court discussed the propriety of a foreclosure sale conducted en masse when the property foreclosed is capable of being sold in separate parcels:
 "The power of sale in a mortgage is not only a power [coupled] with an interest, but it is quickened with an element of trust, `and the donee of the power is charged as a quasi trustee with the duty of fairness and good faith in its execution, to the end that the mortgagor's property may be disposed of to his pecuniary advantage in the satisfaction of his debt.'
 ". . . .
 "The reason of the rule requiring property covered by a mortgage or lien which is in `separate parcels, distinctly marked for separate and distinct enjoyment,' to be first offered for sale in parcels rather than en masse, is that a sale in parcels or lots opens a field to a greater number of bidders, is conducive to a better price, and `tends to prevent odious speculation upon the distress of the debtor,' and enables him to redeem some of the property without being compelled to redeem it all. . . . And this rule applies "where the property covered by the mortgage is separated into several distinct lots, either by natural boundaries, by the way in which it is platted or laid out, or by the fact that the parcels are not contiguous,' (41 C.J. 973, § 1421), and inures to the benefit of a party who has acquired rights in subordination to the mortgage by a conveyance from the debtor (Brock et al. v. Berry, 132 Ala. 95, 31 So. 517, 90 Am. St. Rep. 896 [(1901)])."
Kelly, 217 Ala. at 537-38, 117 So. at 70-71. The Court elaborated on this rule in J.H. Morris, Inc. v.Indian Hills, Inc., 282 Ala. 443, 455, 212 So.2d 831, 843
(1968):
 "When the mortgaged land consists of widely separated lots, some of which are dedicated to separate and distinct uses, and are sold by the mortgagee, at one time en masse, and by that means are caused to bring a sum much less than their real value, equity should avoid the sale and let the complainants in to exercise their equity of redemption. A mortgagee is, in a sense, a trustee for the mortgagor, and, in exercising the power of sale contained in the mortgage, the mortgagee must not disregard the rights of the mortgagor. The rule requiring that separate parcels be offered for sale separately arises out of the reasonable presumption, sanctioned by observation and experience, that property in distinct parcels, distinctly marked for separate and distinct enjoyment, will produce more when sold in parcels because the sale is thus accommodated to the probable wants of the purchasers. Of course, if such property is sold en masse and brings a fair price, the mortgagor will not be heard to complain. When a sale and purchase en masse are had under the power of sale contained in a mortgage, the mortgagor, if the purchaser acquires the property at a sum disproportionate to its real value, may, *Page 919 
by seasonable action, have the sale annulled. Dozier v. Farrior, 187 Ala. 181, 65 So. 364 [ (1914)].
 "In a court of law, a power of sale is merely a part of a legal contract to be executed according to its terms. In a court of equity, it is quickened with the elements of a trust, and the donee of the power is charged as a quasi trustee with the duty of fairness and good faith in its execution to the end that the mortgagor's property may be disposed of to his pecuniary advantage in the satisfaction of his debt. Bank of New Brockton v. Dunnavant, 204 Ala. 636, 638, 87 So. 105 [(1920)].
 ". . . .
 "In absence of statute, the effect of a sale under the power en masse, under circumstances where it is to the interest of mortgagor to have the property sold in separate parcels, is not to render the sale void, but irregular and voidable on direct attack by bill in equity filed by the mortgagor, who must show that the trust incident to the exercise of the power has been abused and that he has suffered detriment in the undue sacrifice of his property, or that his right of redemption has been unduly hampered. Rudisill v. Buckner, 244 Ala. 653, 656, 15 So.2d 333 [(1943)]."
282 Ala. at 455, 212 So.2d at 843.
The Seedses contend that the facts in the present case are "nearly identical" to those in Conway v. Andrews,286 Ala. 28, 236 So.2d 687 (1970), in which this Court relied on the above-stated principles in affirming an order setting aside a mortgage-foreclosure sale. In Conway, the appellant took a mortgage on certain property owned by Gulf Development Company ("Gulf) to secure the repayment of a $90,000 note Gulf had executed in her favor. The mortgage provided that the appellant would release individual lots covered under the mortgage upon the payment of $1,200. The appellee bought one of the lots on the property covered by the mortgage, but the appellant did not release the mortgage lien on that lot. After Gulf defaulted on the note, the appellant foreclosed on the mortgage and sold the 32 parcels remaining under the mortgage, including the lot the appellee had purchased, en masse. The appellant then brought an ejectment action against the appellee. The appellee responded by filing a declaratory-judgment action in which he sought a declaration of his rights in the property. The two actions were consolidated.
The trial court set aside the foreclosure and ordered the appellant to release the appellee's lot from the mortgage, subject to the appellee's payment of $1,200 to the appellant. Among other things, the trial court found that the en masse sale of the lots "was deliberately calculated to unduly hamper the right of redemption" of the appellee, and that the appellant's exercise of the power to sell the property under the mortgage "constituted a perversion of the power to a purpose foreign to its intendment and that the sale was `fraught with ill motive, fraud and oppression.'"286 Ala. at 33, 236 So.2d at 691.
On appeal, the appellant contended that the trial court erred in overruling her demurrer to the appellee's complaint. The Court disagreed, stating:
 "The case of Kelly v. Carmichael, 217 Ala. 534, 117 So. 67 [(1928)], is authority for the propositions that where the mortgage contemplates a subdivision of the property, as here, (1) the power of sale in the mortgage `is quickened with an element of trust'; (2) the rights, including the right to redeem part of the property without redeeming all, `inures to the benefit of a party who has acquired rights in subordination to the *Page 920 
mortgage by a conveyance from the debtor'; and (3) that the reason for disfavoring en bloc sales is that such sale precludes a redemption of a separate part of the property taken.
 "In order to attack a sale en bloc in equity, the mortgagor, or his grantees must show that the trust incident to the exercise of the power of sale in the mortgage has been abused and that he has suffered detriment in the undue sacrifice of the property, or that his right of redemption has been unduly hampered. Rudisill v. Buckner, 244 Ala. 653, 15 So.2d 333 [(1943)], and cases there cited. Appellee met these requirements in his bill."
286 Ala. at 34, 236 So.2d at 692.
The appellant also contended on appeal that the trial court erred in entering its final decree. Addressing this argument, the Court stated, in relevant part:
 "The lower court found that appellant engaged in conduct `deliberately calculated to conceal from the Complainant, and prevent the discovery of the existence of a mortgage lien upon his home, to the end that he should not be afforded a timely opportunity to exercise his legal and equitable rights in the premises,. . . .' We think that the trial court was saying that appellant was aware that appellee had a right under the mortgage to buy a release of Lot 8 and that appellant's purpose in foreclosing on Lot 8, along with the other lots, was to terminate that right so that appellant could acquire the house and lot for herself. There was evidence to support such a finding. Appellant's husband and agent admitted that appellant did not attempt to give actual notice of the foreclosure to Mr. Andrews because of the fear that Mr. Andrews would try to buy a release of his lot. And there was evidence that appellant had routinely given such releases in the past. We said in Collins v. Thompson, 259 Ala. 82, 65 So.2d 491 [(1953)], concerning the exercise of a power of sale by the mortgagee:
 "`. . . If in any case it is attempted to pervert the power from its legitimate purpose and to use it for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself, a court of equity will enjoin a sale or will set it aside if made. Wittmeier v. Tidwell, 147 Ala. 354, 40 So. 963 [(1906)], and authorities there cited. . . .'"
286 Ala. at 35, 236 So.2d at 693. This Court affirmed the trial court's judgment setting aside the foreclosure sale so that the appellee could purchase a release of the mortgage lien on his lot.
In response to the Seedses' reliance on Andrews, Muller, in his reply brief, cites this Court's decision inAmes v. Pardue, 389 So.2d 927 (Ala. 1980). InAmes, the trial court set aside a mortgage-foreclosure sale of several parcels of real property on the basis that the sale had been conducted en masse. The mortgage contained a provision vesting the mortgagee/appellant with discretion "`to sell [the] property . . . in lots or parcels or en masse as mortgagee's agents, auctioneer or assigns deem best.'" Ames, 389 So.2d at 929.
On appeal, this Court set forth the dispositive issue as follows: "[W]hether a mortgagor, by a mortgage provision, may contractually waive his right to compel the mortgagee to offer the mortgaged property first by parcel rather than en masse as equity might dictate." 389 So.2d at 930. Resolving this issue, the Court stated:
 "It is the rule in Alabama that a mortgagee is responsible to the mortgagor for the fairness of the manner of the foreclosure sale. If the property concerned consists of separate parcels *Page 921 
which are dedicated to separate and distinct uses, the parcels should be offered separately first in order to obtain the highest possible price for the property and to give the mortgagor a chance to retain some of his property. Dozier v. Farrior, 187 Ala. 181, 65 So. 364 (1914).
 "This rule applies if the property covered by the mortgage is separated into distinct parcels either by natural boundaries, by the way in which it is platted, or by the fact that the parcels are not contiguous. Kelly v. Carmichael, 217 Ala. 534, 117 So. 67 (1928).
 "A foreclosure sale held under a power of sale may be set aside under this rule. Dozier v. Farrior, supra. A power of sale is more than a mere clause in a legal contract and equity regards a mortgagee holding a power of sale as a quasi trustee with a duty of fairness and good faith to the mortgagor in its execution. Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 So. 105 (1920). To void the foreclosure sale, the mortgagor must show that the trust imposed on the mortgagee has been abused and that he has been injured by the sale. Rudisill v. Buckner, 244 Ala. 653, 656, 15 So.2d 333 (1943).
 "A mortgagee's equitable duty to offer first by parcels cannot be abrogated by a general provision of the power of sale giving the mortgagee discretion to hold a sale `when, as and where it shall seem best to them.' Bank of New Brockton v. Dunnavant, supra, 204 Ala. at 639, 87 So. at 106. However, if, as is the case here, a specific mode of discretion has been prescribed, and the parties to the mortgage are equal in sophistication and bargaining power, then a mortgagee's action taken pursuant to the discretion should be permitted to stand. In such circumstances, allowing discretion to the mortgagee would not be to `nullify a duty enjoined by law as essential to the ends of justice.' Id.
 "Pardue [(the mortgagor)] was a sophisticated banker and he conferred discretion over this matter to Central Bank [(the mortgagee)] in arm's-length bargaining. The rule as to parcel by parcel foreclosure sales is intended to secure, the property rights of individuals. In the absence of bad faith, fraud, or other abuse of its discretion by the mortgagee, there is no public policy which would be defeated by permitting sophisticated parties to waive this rule. We find no indication of fraud or bad faith by Central Bank."
389 So.2d at 930-31 (emphasis added). I Based on the clause in the mortgage conferring discretion on the mortgagee to dispose of the mortgaged property en masse, this Court reversed the trial court's judgment and remanded the cause for the trial court to reinstate the foreclosure sale.
Our holding in Ames undermines the 3 Seedses' argument that the trial court properly set aside the foreclosure sale because Muller sold the property en masse. Like the mortgage at issue in Ames, the mortgage Silver Point executed in favor of Muller provided Muller with specific discretion as to the manner in which he could exercise his power of sale under the mortgage. The mortgage states, in pertinent part, that Muller, upon foreclosure, has the power to sell the covered property "in lots or parcels or en masse," as he deems best. Our review of the record fails to disclose any significant difference in either the bargaining power or the sophistication of Muller (the mortgagee) and Silver Point (the mortgagor, of which Muller was a 25% shareholder).[4] In the absence of a showing *Page 922 
that the bargaining power or sophistication of the parties to the mortgage materially differed, or that Muller acted in bad faith, fraudulently, or otherwise abused the discretion conferred on him by the mortgage, we cannot conclude that the summary judgment for the Seedses was appropriate on the basis that Muller disposed of the property at the foreclosure sale en masse.[5]
 IV. Conclusion
Based on the foregoing, the trial court's summary judgment cannot be sustained. We therefore reverse the summary judgment in favor of the Seedses and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, and PARKER, JJ., concur.
BOLIN, J., concurs in the result.
[1] More accurately, only a portion of the 162-acre tract has been subdivided into 6 lots; the other portion of the tract has not been subdivided.
[2] On the same day the trial court granted the Seedses' summary-judgment motion, the trial court denied a summary-judgment motion Muller had filed. Although in his appeal Muller requests that, in addition to reversing the trial court's summary judgment in favor of the Seedses, this Court reverse the trial court's denial of his motion for a summary judgment and instruct the trial court to enter a summary judgment in his favor, we note that the denial of a motion for a summary judgment is an interlocutory order that will not support an appeal, absent certification under Rule 5, Ala. R.App. P. See Continental Cos. Co. v. SouthTrust Bank,N.A., 933 So.2d 337, 340 (Ala. 2006). Thus, the denial of Muller's summary-judgment motion is not before this Court.
Separately, we note that there are several other parties and claims involved in this action, a description of which would unnecessarily lengthen this opinion. Many of these claims remain pending. Thus, this Court's appellate jurisdiction is based on the fact that the trial court made its summary judgment final pursuant to Rule 54(b), Ala. R. Civ.App.
[3] As already noted, the evidence of record in this summary-judgment proceeding must be viewed in the light most favorable to the nonmovant below, Muller.
[4] We also note that, after notice was published that the property covered by the mortgage would be sold at a foreclosure sale, neither Silver Point nor the Seedses objected to the sale of the property en masse or requested that the property be sold in parcels.
[5] Our conclusion is not altered by the fact that Silver Point transferred the property to the Seedses, and we do not find that any bargaining power or sophistication they possess could bear on the effectiveness of the authority the mortgage granted to Muller to sell the mortgaged property en masse. To hold that such a transfer could bear on the parties' contractual agreement that the property could be sold en masse would allow a mortgagor who has otherwise conveyed the power to a mortgagee to sell the mortgaged property at a foreclosure sale en masse to defeat this power simply by transferring the property, or a parcel thereof, to a less sophisticated third party. Such a rule could effectively allow a mortgagor to escape the bargained-for effect of its contractual arrangement with a mortgagee.