[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 714 
Venus Feagins, individually and as next friend of her daughter Tamesha Feagins, a minor, appeals from a summary judgment in favor of defendants Curtis Waddy and George Moore. We affirm.
 I. Background
During the 2002-2003 academic year, Tamesha Feagins was an eighth-grade student at Center Street Middle School in Birmingham, where she participated in track and field. On April 12, 2003, the Center Street Middle School track team participated in a city-wide track meet for middle schools held at Parker High School. Tamesha was late for the track meet, and she missed her first event. According to Tamesha, when she arrived at the track meet, Waddy, the coach of the Center Street track team, told her that she had to perform in the high-jump event, an event Tamesha had never done. Tamesha told Waddy that she did not know how to perform a high jump, to which Waddy responded that she was one of his best runners and that he knew she could perform the high jump. When Tamesha reiterated that she did not know how to perform a high jump, Waddy responded that he was the coach and that she could do it. Tamesha contends that Waddy did not instruct her in the proper form and technique in performing the high jump.[1] However, Tamesha acknowledges that she had previously watched the high-jump competition.
As Tamesha attempted a practice jump, she felt pain in her left knee. An athletic trainer at the track meet examined Tamesha's knee and wrapped it in ice; she was unable to compete in the high-jump event. It was later determined that Tamesha had torn her anterior cruciate ligament ("ACL"); the tear required surgery to repair.
On April 1, 2005, Feagins, individually and as Tamesha's next friend, sued Waddy and George Moore, the athletic director for Birmingham City Schools, the school system for the City of Birmingham, in the Jefferson Circuit Court. She alleged that Waddy negligently, willfully, wantonly, and in bad faith failed to adequately train and supervise Tamesha in the high jump, *Page 715 
resulting in her injury. She also alleged that Waddy and Moore had negligently, willfully, wantonly, and in bad faith failed to notify her of insurance the Birmingham Board of Education had in place that would have been available to pay Tamesha's medical expenses and to notify the insurer of Tamesha's injury. She further sought compensation for the loss of Tamesha's services. Waddy and Moore moved for a summary judgment, arguing that they were entitled to State-agent immunity and that they had no duty to notify the insurer of Tamesha's injury; the trial court entered a summary judgment in their favor on May 9, 2006. Feagins appealed.
 II. Standard of Review "This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross Blue Shield of Alabama v. Hodurski 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758
(Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce `substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12."
Dow v. Alabama Democratic Party, 897 So.2d 1035,1038-39 (Ala. 2004).
 III. Analysis
Feagins argues that the trial court erred in entering a summary judgment for Waddy because a question of material fact exists as to whether Waddy trained Tamesha in the proper technique for performing the high jump. She argues that Waddy had no discretion in training Tamesha and thus that he was performing a ministerial function instead of a discretionary function and is not protected by the doctrine of sovereign immunity. We disagree.
"Since [Ex parte] Cranman[, 792 So.2d 392 (Ala. 2000)], we analyze immunity issues in terms of `State-agent' immunity rather than `under the dichotomy of ministerial versus discretionary functions.'" Howard v. City of Atmore,887 So.2d 201, 203 (Ala. 2003) (quoting Ex parte Hudson,866 So.2d 1115, 1117 (Ala. 2003)). In Ex parte Cranman,792 So.2d 392 (Ala. 2000), a plurality of this Court restated the rule governing State-agent immunity:
 "A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
 "(1) formulating plans, policies, or designs; or
 "(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
 "(a) making administrative adjudications;
 "(b) allocating resources;
 "(c) negotiating contracts;
 "(d) hiring, firing, transferring, assigning, or supervising personnel; or
 "(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner *Page 716 
for performing the duties and the State agent performs the duties in that manner; or
 "(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
 "(5) exercising judgment in the discharge of duties imposed by statute, — rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
 "Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
 "(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
 "(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405 (some emphasis added). In Ex parteButts, 775 So.2d 173 (Ala. 2000), a majority of this Court adopted the Cranman restatement of the rule governing State-agent immunity.
 "We have established a `burden-shifting' process when a party raises the defense of State-agent immunity. Ex parte Wood, 852 So.2d 705 (Ala. 2002). In order to claim State-agent immunity, the [defendants] bear the burden of demonstrating that [the plaintiffs] claims arise from a function that would entitle them to immunity. Wood, 852 So.2d at 709; Ryan v. Hayes, 831 So.2d 21 (Ala. 2002). If the [defendants] make such a showing, the burden then shifts to [the plaintiff], who, in order to deny the [defendants] immunity from suit, must establish that the [defendants] acted willfully, maliciously, fraudulently, in bad faith, or beyond their authority. Wood, 852 So.2d at 709; Ex parte Davis, 721 So.2d 685, 689 (Ala. 1998). A State agent acts beyond authority and is therefore not immune when he or she `fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.' Ex parte Butts, 775 So.2d 173, 178 (Ala. 2000)."
Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala. 2003).
This Court addressed a similar issue in Ex parte Nail,879 So.2d 541 (Ala. 2003). In Nail, a baseball hit by a high school baseball coach during a practice drill struck a player in the head. The player's parents sued the baseball coach, alleging that the coach was acting "tortiously" when he hit the baseball and that he therefore was not protected by State-agent immunity. Specifically, they argued that the coach was hitting the ball too hard because some players had been teasing him for not hitting the ball very hard. TheNail Court noted:
 "There is no exception under Cranman for `tortious' conduct unless the State agent `acts willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of the law.' Cranman, 792 So.2d at 405. Once a State agent demonstrates that a plaintiffs claims are based on conduct that occurred while the State agent was exercising his judgment, ` "the burden then shifts to the plaintiff to establish that the [State agent] acted in bad faith or with malice or willfulness in order to deny the [State agent] immunity from suit."' [Ex parte] Spivey, [846 So.2d 322, 333 (Ala. 2002)] (quoting *Page 717 Ex parte Davis, 721 So.2d 685, 689 (Ala. 1998))."
879 So.2d at 546. The Court concluded that although the coach may have been hitting the ball hard, there was no evidence indicating that doing so was outside the intended scope or nature of the practice drill the coach was conducting. Therefore, the coach's actions did not fall under one of theCranman exceptions to State-agent immunity.
In limited circumstances this Court has held that State-agent immunity does not apply to the actions of a coach. InGiambrone, supra, Douglas, a 29-year-old, 200-pound wrestling coach, wrestled Giambrone, a 15-year-old, 150-pound student, in a challenge wrestling match during practice. While Douglas was performing a wrestling maneuver called a "cement job" on Giambrone, Giambrone suffered a severe spinal-cord injury, which rendered him a quadriplegic. Giambrone's mother, acting individually and on behalf of Giambrone, sued Douglas. Douglas claimed that his actions were protected by State-agent immunity. This Court noted: "A State agent acts beyond his authority and is therefore not immune when he or she `fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.' Ex parte Butts,775 So.2d 173, 178 (Ala. 2000)." 874 So.2d at 1052. Although the local board of education had not adopted any rules, regulations, policies, or procedures establishing how wrestling practice was to be conducted, the high school athletic director had furnished Douglas with the guidelines and rules of the Alabama High School Athletic Association ("AHSAA") and the National Federation of Wrestling ("NFW"), as well as the Alabama High School Athletic Directors and Coaches Association Directories ("the Athletic Directories"). Both the AHSAA and NFW rules addressed potentially dangerous wrestling holds and illegal headlocks. Likewise, the Athletic Directories contained a code of conduct that prohibited "inequitable competition." This Court concluded that the athletic director exercised judgment the local board allowed him to exercise in giving Douglas the rules and guidelines of the AHSAA and NFW, as well as the Athletic Directories. "We cannot agree that such guidelines and rules must be adopted by the Board before they can create a duty on Douglas's part." 874 So.2d at 1055. Thus, this Court concluded that the summary judgment based on State-agent immunity was inappropriate as to the coach in that situation.
In this case, no evidence refuting Waddy and Moore's summary-judgment motion was properly before the trial court. The record indicates that the trial court instructed Feagins to file a response to the summary-judgment motion on or before May 5, 2006, and that a hearing on the motion was to be held on May 8, 2006. The trial court entered the summary judgment on May 9, 2006, and Feagins did not file her response to the summary-judgment motion until May 10, 2006, a day after the summary judgment was entered. Any response to Waddy and Moore's summary-judgment motion had to be served on the court at least two days before the scheduled hearing. Rule 56(c)(2), Ala. R. Civ. P. Because May 6, 2006, was a Saturday and the hearing was on Monday, the trial court ordered a response by Friday, May 5. The trial court was certainly entitled to disregard Feagins's submission as untimely under Rule 56(c)(2), Ala. R. Civ. P., and nothing in the record indicates that the trial court considered her tardy response. Even assuming that the trial court chose to consider it, however, Feagins's submission fails to create a question of fact that would defeat Waddy and Moore's motion for a summary judgment. Specifically, Feagins failed to properly *Page 718 
present the trial court with evidence of the kind that existed in Giambrone, i.e., rules or regulations providing guidance for Waddy. The record does indicate that Feagins attached to her response to the summary-judgment motion what appear to be excerpted pages from the AHSAA rules and regulations. These pages, however, are not authenticated in any manner. "Documents submitted in support of or in opposition to a summary-judgment motion are generally required to be certified or otherwise authenticated; if they are not, they constitute inadmissible hearsay and are not considered on summary judgment." Tanksley v. ProSoft Automation,Inc., [Ms. 1050099, June 1, 2007] ___ So.2d ___, ___ (Ala. 2007). Thus, we will not consider those documents in our analysis.
As was the case in Nall, it is undisputed that Waddy was discharging his duties in educating students by coaching the track team. By selecting which participants would participate in which event, Waddy was exercising his judgment in discharging his duties in educating students, and "we may not second-guess his decision." Ex parte Spivey,846 So.2d 322, 332 (Ala. 2002).
The notice of appeal and docketing statement to this Court indicate that Feagins also appealed the summary judgment entered in favor of Moore. However, Feagins fails to address the summary judgment entered in favor of Moore in her brief to this Court. Feagins does not pursue on appeal her allegation that Waddy and Moore breached a duty to inform the Board of Education's insurer of Tamesha's injury and to notify Tamesha of the availability of insurance to cover her injury. "Issues not argued in a party's brief are waived." Waddell Reed, Inc. v. United Investors Life Ins. Co.,875 So.2d 1143, 1167 (Ala. 2003). We therefore do not disturb the summary judgment in favor of Moore and Waddy on this issue.
 IV. Conclusion
Because the trial court correctly determined that Waddy is entitled to State-agent immunity relating to the decisions he made as a track-and-field coach at a public school, we affirm the summary judgment in his favor. Because Feagins makes no argument on appeal as to Moore, we affirm the summary judgment in his favor.
AFFIRMED.
SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
[1] Waddy disputes Feagins's allegations. According to Waddy, he asked Tamesha to perform the high jump because he was shorthanded in that event and she had previously successfully competed in the long jump. Waddy also contends that he instructed Tamesha individually on the proper technique associated with the high jump before she attempted it and that he had instructed the track team earlier in the season regarding the proper technique for performing the high jump. Waddy also disputes that he forced Tamesha to perform in the high-jump competition.