MOORE, Judge.
 

 Weaver Hawkins III appeals from the Jefferson Circuit Court’s summary judgment in favor of LaSalle Bank, National Association (“LaSalle”), in LaSalle’s ejectment action against Hawkins. We reverse and remand.
 

 Facts
 

 On January 26, 1995, Hawkins’s father, Weaver Hawkins, Jr., executed a mortgage (“the mortgage”) in favor of NationsCredit Financial Services Corporation (“Nation-sCredit”) on three separate parcels of property located in different parts of Birmingham. Hawkins’s father died testate on July 16, 1995, leaving all of his property, including the three parcels, to Hawkins. According to Hawkins, he published notice of his father’s death to his father’s creditors by publication.
 

 Subsequently, after receiving two letters addressed to Weaver Hawkins, Jr., from a servicing agent for NationsCredit, advising that NationsCredit intended to begin foreclosure proceedings on the mortgage due to nonpayment, Hawkins filed a Chapter 13 bankruptcy proceeding. The three parcels of property were included as property of the bankruptcy estate. The bankruptcy court entered an order staying any foreclosure proceedings so long as Hawkins made payments on the mortgage under the bankruptcy plan. By confirmation order dated September 22, 2004, the bankruptcy court ordered Hawkins to pay the mortgage; Hawkins further stated that the bankruptcy court’s order required that NationsCredit provide him notice of any default before proceeding to foreclosure. According to Hawkins, he lived on one of the three mortgaged parcels (“the subject property”) at that time.
 

 In a letter dated November 3, 2005, addressed to Weaver Hawkins, Jr., Na-tionsCredit, through another servicing agent, advised that it would conduct a foreclosure sale on the three parcels on December 9, 2005, after running notice of
 
 *1145
 
 the sale in the
 
 Alabama Messenger,
 
 a newspaper of general circulation in Jefferson County, beginning on November 5, 2005. According to Hawkins, although he did not receive any further letters regarding the foreclosure, he had learned that another notice of the foreclosure had been run in the
 
 Alabama Messenger
 
 on December 17, 2005, which stated that the foreclosure sale would occur on January 9, 2006.
 

 According to Adam Shields, LaSalle’s document-control officer, the mortgage was “transferred and assigned to LaSalle” before the foreclosure sale. Hawkins submitted evidence indicating that the two parcels on which he did not reside had been purchased at tax sales conducted before the foreclosure sale by Birmingham Health Care and Willie Dunn, respectively. Hawkins also presented evidence indicating that, before the foreclosure sale took place, he and Birmingham Health Care had requested that LaSalle sell the properties by individual parcels. The foreclosure sale took place on January 9, 2006; the three parcels were sold en masse, and the foreclosure deed submitted to the court lists LaSalle as the purchaser of the three parcels for a total price of $87,049.14.
 

 Scott J. Humphrey, LaSalle’s attorney, stated in his affidavit that he had sent a letter to Hawkins on January 10, 2006, advising him that LaSalle had purchased the three parcels at the foreclosure sale and requesting that Hawkins surrender possession of the subject property to La-Salle within 10 days. Humphrey further stated that Hawkins had failed or refused to vacate the subject property. According to an affidavit submitted by M. Katherine Blackwell, the foreclosure supervisor for LaSalle’s attorney, Hawkins had unlawfully remained in possession of the subject property despite LaSalle’s demands that Hawkins vacate the premises.
 

 Procedural History
 

 On January 31, 2006, LaSalle filed a complaint in the Jefferson Circuit Court against Hawkins seeking to recover possession of the subject property. Hawkins filed an answer to the complaint on October 18, 2006. On October 31, 2006, La-Salle filed a motion for a summary judgment; LaSalle attached the affidavits of Blackwell and Humphrey to that motion. In November 2006, Hawkins filed a response to LaSalle’s summary-judgment motion, in which he asserted that the foreclosure had been improper. The trial court granted that motion on April 26, 2007; however, upon timely motions filed by Hawkins, the trial court subsequently stayed the execution of the summary judgment and then set aside the summary judgment on June 15, 2007.
 

 After completing additional discovery, LaSalle again moved for a summary judgment on October 3, 2007. On October 22, 2007, Hawkins filed a response in opposition to LaSalle’s summary-judgment motion, along with a motion to set aside the foreclosure sale. Hawkins argued that LaSalle had failed to issue notice of the actual date of the foreclosure sale to the proper parties and that LaSalle had failed to publish notice of the actual date of the foreclosure sale three times as required by § 35-10-8, Ala.Code 1975. Hawkins further argued that the foreclosure sale was improper because the three parcels of property were not sold separately and because LaSalle had foreclosed against Weaver Hawkins, Jr., rather than his estate.
 

 LaSalle filed a supplement to its summary-judgment motion and a response to Hawkins’s opposition on October 31, 2007. LaSalle argued, among other things, that Hawkins’s attempt to void the foreclosure sale was barred by the applicable statute of limitations. On November 2, 2007, Haw
 
 *1146
 
 kins filed an amended answer, which included an affirmative defense that LaSalle was “without legal title to the [subject] property due to defective notice, defective sale, and wrongful foreclosure,” and he requested an order setting aside the foreclosure sale. Also on November 2, 2007, Hawkins filed a supplemental response in opposition to LaSalle’s supplemental summary-judgment motion, in which he asserted that he had raised the issue that the foreclosure was improper in his response to LaSalle’s first summary-judgment motion in November 2006 and that, therefore, he was not time-barred from raising that issue as a defense to LaSalle’s ejectment action.
 

 On January 18, 2008, the trial court entered an order granting LaSalle’s summary-judgment motion. As a preliminary matter, the trial court found that Hawkins was not time-barred from raising the invalidity of the foreclosure sale as a defense. In its order, the trial court concentrated on Hawkins’s argument that the foreclosure sale was defective because the subject property had been sold with two other parcels en masse instead of by itself. The trial court stated, in pertinent part:
 

 “It is undisputed that the foreclosure sale involved separate parcels that are dedicated to separate and distinct uses, and that the parcels should have been offered on an individual basis first. The failure to do so is sufficient grounds for voiding a sale, but the mortgagor must first show that the trust imposed on the mortgagee has been abused and that he has been injured by the sale.
 
 Garris [v. Federal Land Bank of Jackson
 
 ], 584 So.2d [791] at 794 [ (Ala.1991) ]. The ‘injury1 that must be shown is not clearly defined in
 
 Garris,
 
 and further examination of earlier decisions cited by the
 
 Garris
 
 decision does little to clarify the nature of the requirement. It appears, nevertheless, from most of these cases that a mortgagor challenging such a sale must prove monetary loss resulting from failure to sell his property in individual parcels.
 

 “[Hawkins] contends that because the property was sold en masse, he was unable to purchase the one piece of property on which he currently resides. As support for this claim, [Hawkins] cites
 
 J.H. Morris, Inc. v. Indian Hills, Inc.,
 
 [282 Ala. 443,] 212 So.2d 831, 834 [ (1968) ], which allows a sale to be voided if the defendant is able to show (1) that the trust incident to the exercise of the power has been abused; and (2) that he has suffered detriment in the undue sacrifice of his property. Alternatively, he must show that his right of redemption has been unduly hampered. The Alabama Supreme Court here relied on its earlier decision of
 
 Kelly v. Carmichael,
 
 [217 Ala. 534,] 117 So. 67 (Ala.1928)[,] to shed some light on the rationale for the rule requiring property to be first offered for sale in parcels:
 

 “1... sale in parcels or lots opens a field to a greater number of bidders, is conducive to a better price, tends to prevent odious speculation upon the distress of the debtor, and enables him to redeem some of the property without being compelled to redeem it all.’
 

 " J.H. Morris, Inc. v. Indian Hills, Inc.,
 
 [282 Ala. at 455,] 212 So.2d at 844.
 

 “Again, the Supreme Court seemed to focus primarily on pecuniary considerations. The Court here opined that the trial court was justified in finding that an injury resulted from selling en masse instead of by separate parcel after the trial court heard testimony from an expert real estate appraiser that the sale in parcels would have brought about a considerably larger sum of money.
 
 Id.
 

 
 *1147
 
 “[Hawkins] here has failed to provide this Court evidence that he experienced a financial injury as a result of the foreclosure sale. Instead, [Hawkins] contends that such evidence is not required at this stage in the litigation, stating that ‘it is not required that the [defendant prove any part of his case only that he raise an issue of material fact.’
 

 “The Court holds that the law requires more, as shown by
 
 Ex parte General Motors Corporation,
 
 769 So.2d 903 ([Ala.] 1999), in which the Alabama Supreme Court offered further clarification of Rule 56(c)[, Ala. R. Civ. P.]:
 

 “ ‘In our view, the plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no “genuine issue as to any material fact,” since a complete failure of proof concerning an essential element of the nonmoving party’s case necessarily renders all other facts immaterial. The moving party is “entitled to a judgment as a matter of law” because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. “The standard for granting summary judgment mirrors the standard for a directed verdict under Federal of Civil Procedure 50(a)
 

 “Without evidence of [Hawkins’s] injury resulting from the foreclosure sale en masse, specifically monetary harm, [Hawkins] has not met his burden set out in Rule 56(c). Therefore, [Hawkins] has failed to raise a genuine issue as to any material fact.”
 

 On February 15, 2008, Hawkins filed a postjudgment motion, arguing that the trial court’s summary-judgment order was contrary to the law and the facts of the case; he also filed a motion for a stay, in which he requested that the trial court stay execution of its judgment pending the disposition of Hawkins’s postjudgment motion. The trial court granted Hawkins’s motion for a stay on February 22, 2008. On April 9, 2008, the trial court entered an order denying Hawkins’s postjudgment motion; that order stated, in pertinent part:
 

 “[T]he Court does not gloss over the fact that [LaSalle] abused the trust it enjoyed by powers conveyed under the mortgage. The evidence shows that [LaSalle] elected to sell [Hawkinsj’s residence en masse with two other parcels, for no good reason shown and in the face of [Hawkins’s] request to sell the property separately. The Court also notes that law on this issue recognizes that a mortgagor in [LaSalle’s] position serves as a kind of a trustee; if that be so, an entity that breaches such duties could expose itself to personal liability.
 

 “Here, [Hawkins]’s motion must be denied because of the Court’s renewed conclusion that [Hawkins] has failed to meet his burden of providing substantial evidence of actual injury.”
 

 On April 9, 2008, Hawkins filed a motion to stay execution of the court’s final judgment pending the resolution of Hawkins’s intended appeal and, pursuant to Rule 8(a)(3), Ala. R.App. P., to set a supersede-as bond. LaSalle filed a response to Hawkins’s motion on April 14, 2008. On April 22, 2008, the trial court entered an order granting Hawkins’s motion to stay, conditioned on his paying into the clerk of the trial court the monthly sum of $560. Haw
 
 *1148
 
 kins filed his notice of appeal to this court on May 20, 2008.
 

 Standard of Review
 

 ‘“This Court’s review of a summary judgment is de novo.
 
 Williams v. State Farm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Ho-durski,
 
 899 So.2d 949, 952-58 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce “substantial evidence” as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.’ ”
 

 Feagins v. Waddy,
 
 978 So.2d 712, 715 (Ala.2007) (quoting
 
 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004)).
 

 Discussion
 

 On appeal, Hawkins primarily argues that the trial court erred in entering a summary judgment in favor of LaSalle because, he says, the en masse sale of the three parcels impaired his rights to redeem the subject property, thus rendering the foreclosure sale, and LaSalle’s foreclosure deed, invalid. Hawkins asserts that his “loss of these rights constitutes injury that Alabama courts have recognized” and that “[t]he law does not require him to quantify this loss in terms of arithmetically calculated financial loss.” We agree.
 

 We conclude that the trial court erred in determining that a mortgagor challenging a foreclosure sale in which separate properties were sold en masse rather than by parcel must prove monetary loss to invalidate the sale. The supreme court discussed at length the rule requiring that separate and distinct parcels are to be sold by parcel at a foreclosure sale (“the rule”) in
 
 J.H. Morris, Inc. v. Indian Hills, Inc.,
 
 282 Ala. 443, 455, 212 So.2d 831, 843 (1968):
 

 “A mortgagee is, in a sense, a trustee for the mortgagor, and, in exercising the power of sale contained in the mortgage, the mortgagee must not disregard the rights of the mortgagor. The rule requiring that separate parcels be offered for sale separately arises out of the reasonable presumption, sanctioned by observation and experience, that property in distinct parcels, distinctly marked for separate and distinct enjoyment, will produce more when sold in parcels because the sale is thus accommodated to the probable wants of the purchasers. Of course, if such property is sold en masse and brings a fair price, the mortgagor will not be heard to complain. When a sale and purchase en masse are had under the power of sale contained in a mortgage, the mortgagor, if the purchaser acquires the property at a sum disproportionate to its real value, may, by seasonable action, have the sale annulled.
 
 Dozier v. Farrior,
 
 187 Ala. 181, 65 So. 364 [ (1914) ].
 

 “In a court of law, a power of sale is merely a part of a legal contract to be executed according to its terms. In a court of equity, it is quickened with the elements of a trust, and the donee of the power is charged as a quasi trustee with
 
 *1149
 
 the duty of fairness and good faith in its execution to the end that the mortgagor’s property may be disposed of to his pecuniary advantage in the satisfaction of his debt.
 
 Bank of New Brockton v. Dunnavant,
 
 204 Ala. 636, 638, 87 So. 105 [ (1920) ].
 

 “The reason for the rule requiring property covered by a mortgage or lien, which property is in separate parcels distinctly marked for separate and distinct enjoyment, to be first offered for sale in parcels rather than en masse, is that a sale in parcels or lots opens a field to a greater number of bidders, is conducive to a better price, tends to prevent odious speculation upon the distress of the debtor, and enables him to redeem some of the property without being compelled to redeem it all.
 
 Kelly v. Carmichael,
 
 217 Ala. 534, 537, 538, 117 So. 67 [ (1928) ];
 
 Lee v. Macon County Bank,
 
 233 Ala. 522, 172 So. 662 [(1937)].
 

 “This rule applies where the property covered by the mortgage is separated into several distinct tracts or lots, either by natural boundaries, by the way in which it is platted or laid out, or by the fact that the parcels are not contiguous, and inures to the benefit of a party who has acquired rights in subordination to the mortgage by a conveyance from the debtor.
 
 Kelly v. Carmichael,
 
 supra.
 

 “In absence of statute, the effect of a sale under the power en masse, under circumstances where it is to the interest of mortgagor to have the property sold in separate parcels, is not to render the sale void, but irregular and voidable on direct attack by bill in equity filed by the mortgagor, who must show that the trust incident to the exercise of the power has been abused and that he has suffered detriment in the undue sacrifice of his property, or that his right of redemption has been unduly hampered.
 
 Rudisill v. Buckner,
 
 244 Ala. 653, 656, 15 So.2d 333 [ (1943) ].”
 

 Hawkins argues that
 
 George v. Federal Land Bank of Jackson,
 
 501 So.2d 432, 437 (1986), and
 
 Ames v. Pardue,
 
 389 So.2d 927 (Ala.1980), make it clear that, “while recovery by the mortgagor is predicated upon his ability to establish injury as a result of the en masse foreclosure sale, it is clear that that injury may be cognizable in a form other than the transparent financial injury that the trial court envisioned in its order granting summary judgment to [La-Salle].” In
 
 George,
 
 however, the Alabama Supreme Court declined to set aside the foreclosure sale because the mortgagor had failed to present any evidence tending to show that the property that had been sold had been divided by natural boundaries or by the way it was platted. 501 So.2d at 436-37. Furthermore, in
 
 Ames,
 
 the Alabama Supreme Court reinstated the foreclosure sale despite the mortgagee’s sale of the property en masse rather than by parcel because the mortgagor had waived his right to demand a parcel-by-parcel foreclosure sale in the mortgage itself. 389 So.2d at 930. Thus, those cases offer little support for Hawkins’s argument.
 

 The trial court correctly observed that, in
 
 Morris,
 
 the Alabama Supreme Court had focused on pecuniary considerations, determining that testimony by an expert real-estate appraiser that a sale by parcels would have yielded a higher purchase price than the sale en masse supported a finding that injury had resulted from selling en masse instead of by separate parcels. 282 Ala. at 456, 212 So.2d at 844. This, however, is not the end of our inquiry. In
 
 Dozier v. Farrior,
 
 187 Ala. 181, 65 So. 364 (1914), the Alabama Supreme Court observed that the rule “arises out of ‘the reasonable presumption ... that such
 
 *1150
 
 property’ ... ‘will produce more when sold in parcels, because the sale is thus accommodated to the probable wants of purchasers,’ ” 187 Ala. at 185, 65 So. at 366 (quoting
 
 Mahone v. Williams,
 
 39 Ala. 202, 217 (1863)), and stated that, “if such property is sold en masse and brings a fair price, the mortgagor will not be heard to complain.” 187 Ala. at 186, 65 So. at 366.
 

 The reasoning for the rule as articulated in
 
 Dozier,
 
 however, appears to be expounded upon in
 
 Kelly v. Carmichael,
 
 217 Ala. 534, 117 So. 67 (1928), in which the Alabama Supreme Court stated that the reason for the rule is that it “opens a field to a greater number of bidders, is conducive to a better price, and ‘tends to prevent odious speculation upon the distress of the debtor,’ and
 
 enables him to redeem some of the property without being compelled to redeem it all.”
 
 217 Ala. at 538, 117 So. at 71 (emphasis added). In
 
 Power v. Larabee,
 
 3 N.D. 502, 57 N.W. 789 (1894), and
 
 Mohan v. Smith,
 
 30 Minn. 259, 15 N.W. 118 (1883), both cited by the supreme court in
 
 Kelly
 
 in support of the reasoning behind the rule, the Supreme Court of North Dakota and the Supreme Court of Minnesota, respectively, determined that the rule should be followed when selling property en masse would interfere with the mortgagor’s right of redemption by requiring him or her to redeem the property in its entirety, rather than allowing the mortgagor to redeem those particular parcels that are valuable to him or her for a lesser price than the price of the property as a whole.
 
 Power,
 
 3 N.D. at 507-68, 57 N.W. at 790;
 
 Mohan,
 
 30 Minn, at 260, 15 N.W. at 118. That reasoning was clearly endorsed by the Alabama Supreme Court in
 
 Kelly.
 

 Moreover, the discussion and ruling in
 
 Conway v. Andrews,
 
 286 Ala. 28, 236 So.2d 687 (1970), lends further support for the argument made by Hawkins. In
 
 Conway,
 
 Gulf Development Company (“Gulf’) purchased a plot of unimproved land from Conway and gave Conway a promissory note for $90,000 as consideration, which was to be paid at a rate of $500 per month. 286 Ala. at 31, 236 So.2d at 689. Conway also took a mortgage upon the property; that mortgage provided that Conway would release individual lots from the mortgage upon the payment of $1,200 per lot.
 
 Id.
 
 Gulf paid for releases on 47 lots, and, thereafter, Gulfs business activity in developing the lots ceased, leaving 31 vacant lots in a second phase of the development and Lot 8 in the first phase of the development all unreleased and still subject to the mortgage. 286 Ala. at 31-32, 236 So.2d at 689-90. Andrews had purchased the house constructed by Gulf on Lot 8 in 1957 and had lived there since that time. 286 Ala. at 32, 236 So.2d at 690. “In 1965, after it became clear that she could not collect the balance due on Gulfs note,” Conway decided to foreclose; Conway published advertisements of the foreclosure in a newspaper and sold the 32 parcels at a public auction.
 
 Id.
 
 Conway submitted the highest bid and purchased the property for $50,000; Andrews, who Conway knew at the time of the auction had paid taxes on Lot 8 since 1957, had been out of town on business before the first advertisement regarding the sale had been run and had returned after the sale had been completed.
 
 Id.
 
 Conway made no effort to inform Andrews of the impending sale of his house and lot.
 
 Id.
 
 Conway then brought a statutory ejectment suit against Andrews, and Andrews filed a declaratory-judgment action in equity, seeking a declaration of his rights in the property.
 
 Id.
 

 The trial court set aside the foreclosure and ordered Conway to release Lot 8 from her mortgage upon the payment to her by Andrews of $1,200.
 
 Id.
 
 On appeal, Conway argued that there was no equity in the case. 286 Ala. at 32, 236 So.2d at 691.
 
 *1151
 
 The Alabama Supreme Court, however, concluded that the contention “that the foreclosure should be set aside because the foreclosure sale had been conducted en bloc instead of by contiguous parcels and that such a sale hindered [Andrews’s] right to redeem and that [Conway] had thereby abused the trust duty owed to [Andrews]” clearly contained equity. 286 Ala. at 34, 236 So.2d at 692. The court then stated:
 

 “The case of
 
 Kelly v. Carmichael,
 
 217 Ala. 534, 117 So. 67 [ (1928) ], is authority for the propositions that where the mortgage contemplates a subdivision of the property, as here, (1) the power of sale in the mortgage ‘is quickened with an element of trust’; (2) the rights, including the right to redeem part of the property without redeeming all, ‘inures to the benefit of a party who has acquired rights in subordination to the mortgage by a conveyance from the debtor’; and (3) that the reason for disfavoring en bloc sales is that such sale precludes a redemption of a separate part of the property taken.
 

 “In order to attack a sale en bloc in equity, the mortgagor, or his grantees must show that the trust incident to the exercise of the power of sale in the mortgage has been abused and that he has suffered detriment in the undue sacrifice of the property, or that his right of redemption has been unduly hampered.
 
 Rudisill v. Buckner,
 
 244 Ala. 653, 15 So.2d 333 [ (1943) ], and cases there cited. [Andrews] met these requirements in his bill.”
 

 Id.
 

 We conclude, based on
 
 Kelly
 
 and
 
 Conway,
 
 that Hawkins was not required to prove that the en masse foreclosure sale produced an inadequate price, as stated by the trial court. We hold that Hawkins presented a genuine issue of material fact precluding summary judgment by presenting substantial evidence indicating that he would lose his housing and that the foreclosure sale en masse hampered his ability to redeem the subject property. If satisfactorily proven at trial, those facts would render the foreclosure sale and the resulting foreclosure deed invalid and would prevent LaSalle from having the necessary standing to prosecute the ejectment action.
 
 See Cadle Co. v. Shabani,
 
 950 So.2d 277, 279 (Ala.2006) (“In order to maintain an action for ejectment, a plaintiff must allege either possession or legal title, and the ‘action must be commenced in the name of the real owner of the land or in the name of the person entitled to possession thereof....’ § 6-6-280, Ala.Code 1975.”).
 

 LaSalle argues that the trial court’s judgment is due to be affirmed because Hawkins failed to join NationsCredit, Birmingham Health Care, and Willie Dunn, who, according to LaSalle, were required to be joined as necessary parties pursuant to Rule 19(a), Ala. R. Civ. P. This case was initiated by LaSalle as an ejectment action against Hawkins; Hawkins, in turn, asserted that the foreclosure sale was void as an affirmative defense. LaSalle does not contend that Birmingham Health Care or Dunn have held any interest at any time in the subject property, which is the only property discussed in the complaint. Hence, they are not necessary parties within the meaning of Rule 19(a). With regard to NationsCredit, LaSalle alleged and provided an affidavit by Adam Shields asserting that the mortgage between Hawkins’s father and NationsCredit had been transferred and assigned to LaSalle. Because NationsCredit no longer had any interest in the subject property at the time of the foreclosure sale, NationsCredit is not a necessary party to the ejectment action. We therefore reject LaSalle’s argument that failure to join those parties
 
 *1152
 
 somehow requires affirmance of the trial court’s judgment.
 

 LaSalle next argues that the trial court’s judgment is due to be affirmed because, it says, Hawkins failed to file a counterclaim or to attempt to redeem the subject property within the one-year redemption period set forth in § 6-5-252, Ala.Code 1975. The trial court rejected that argument, concluding that LaSalle was put on notice less than one year after the foreclosure sale that Hawkins was raising the defense that the foreclosure sale was improper, that Hawkins had amended his answer to specifically plead that defense, and that the amendment related back, pursuant to Rule 15(c), Ala. R. Civ. P., to the date of Hawkins’s original answer, filed on October 18, 2006. We agree with the trial court that that amendment related back to the date of the original answer.
 

 LaSalle argues further that, even if the defense of the invalidity of the foreclosure deed had been timely raised, under
 
 Muller v. Seeds,
 
 919 So.2d 1174 (Ala.2005), Hawkins cannot prevail because he failed to file a counterclaim. In
 
 Muller,
 
 Muller filed an ejectment action requesting the trial court to eject Chris Seeds and Linda Seeds from property he had purchased at a foreclosure sale. 919 So.2d at 1176. The Seedses filed an answer and a counterclaim against Muller, alleging “breach of contract and wrongful foreclosure.”
 
 Id.
 
 The trial court later granted a motion for a summary judgment, filed by the Seedses, only as to Muller’s ejectment claim, and Muller appealed.
 
 Id.
 
 The Alabama Supreme Court stated the following in response to the Seedses’ argument that the defendant in an ejectment action can prevail over the plaintiff by demonstrating that the property should have been sold in individual parcels rather than en masse:
 

 “We note ... that in
 
 Conway
 
 Andrews prevailed and the trial court set aside Conway’s foreclosure because Andrews counterclaimed in chancery requesting that the sale be set aside. 286 Ala. at 32, 236 So.2d at 690. In every other case that we have found, a trial court has likewise set aside a foreclosure only upon a pleading specifically requesting such relief....
 

 “In their counterclaim, the Seedses alleged Muller’s ‘wrongful foreclosure’ and specifically requested that the trial court set aside the foreclosure. That counterclaim, however, has never been ruled upon and is not before this Court. Only Muller’s ejectment claim is currently at issue, and only the Seedses’ legal and equitable defenses to that claim may be considered in reviewing the summary judgment. Other than the Seedses’ earlier argument that they paid sufficient consideration to Muller for a release of Lot 3 from the mortgage, however, they argue the applicability of no defense — legal or equitable. Thus they have failed to present evidence sufficient to entitle them to a summary judgment on Muller’s ejectment claim. Consequently, concluding that the Seedses failed to meet their burden, we reverse the summary judgment.”
 

 919 So.2d at 1178.
 

 Muller
 
 does not stand for the proposition that the invalidity of a foreclosure sale may be raised only in a counterclaim to an ejectment action.
 
 Muller
 
 merely held that when the invalidity of a foreclosure sale is raised only in a counterclaim, that counterclaim will not be considered a defense to the ejectment action. In this case, Hawkins specifically pleaded the invalidity of the foreclosure sale as a defense to the ejectment action. As such, under
 
 Muller,
 
 by presenting substantial evidence in support of that defense, Hawkins presented
 
 *1153
 
 sufficient evidence to defeat LaSalle’s motion for a summary judgment.
 

 LaSalle also asserts that the trial court erred by holding that LaSalle abused its trust. LaSalle, however, did not file a cross-appeal in this case. “[T]he Alabama Rules of Appellate Procedure do not allow an appellee to cross-assign errors without taking an appeal.”
 
 Headley v. Housing Auth. of Prattville,
 
 347 So.2d 532, 534 (Ala.Civ.App.1977).
 
 See also
 
 Rule 4(a)(2), Ala. R.App. P. Thus, we decline to address any assignment of error on the trial court by LaSalle.
 

 Because there was a genuine issue of material fact before the trial court as to the validity of the foreclosure sale, and because the voidance of the foreclosure sale would necessarily defeat LaSalle’s ejectment action, we reverse the trial court’s summary judgment in favor of La-Salle, and we remand the cause for further proceedings. Because we are reversing on this ground, we decline to address any remaining arguments by Hawkins asserting that the foreclosure sale was improper.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.