PITTMAN, Judge,
dissenting.
I.
I dissent because I do not believe this case presents an issue of standing. The main opinion correctly states that, “as part of its initial burden for seeking a summary judgment in its [ejectment] action ..., BAC [Home Loans Servicing, LP,] was required to present evidence constituting a prima facie case that it had legal title or a right to possess the property.” 159 So.3d at 20. Unlike the ejectment plaintiff in Cadle Co. v. Shabani, 950 So.2d 277 (Ala. 2006), who had no paper title to the property, BAC Home Loans Servicing, LP (“BAC”), satisfied its burden by producing the foreclosure deed. Standing is determined at the commencement of an action, see Cadle, 4 So.3d at 463, and when BAC commenced the ejectment action, it was prima facie the legal title holder because it produced a foreclosure deed, see Muller v. Seeds, 919 So.2d 1174, 1177 (Ala.2005).
Although I believe that Cadle actually presented a question of the plaintiffs inability to prove the allegations of its complaint rather than a question of standing, I recognize that this court would be bound by Cadle if it were on point. But, Cadle is not on point, nor is Ex parte McKinney, 87 So.3d 502 (Ala.2011), on point, because in neither case did the ejectment plaintiff make an initial prima facie showing of legal title. To reiterate, BAC did make such a showing by producing its foreclosure deed; therefore, Cadle and McKinney are not controlling.
The main opinion concludes that because of fundamental defects in the foreclosure proceeding, BAC’s foreclosure deed is void and, therefore, that BAC does not have legal title to the property. In reaching that conclusion, the main opinion relies on § 35-10-9, Ala.Code 1975, and Kelly v. Carmichael, 217 Ala. 534, 117 So. 67 (1928). Section 35-10-9 provides that
“[a]ll sales of real estate, made under powers contained in mortgages or deeds of trust contrary to the provisions of this article [Article 1 of Chapter 10 of Title 35, entitled ‘Powers Contained in Mortgages’], shall be null and void, notwithstanding any agreement or stipulation to the contrary.”
(Emphasis added). Our supreme court has held that foreclosure sales made in violation of the predecessor statutes to § 35-10-1 et seq., Ala. Code 1975, are “voidable on direct attack,” that is, in actions to set aside a mortgage foreclosure and to redeem. Vick v. Bishop, 252 Ala. 250, 253, 40 So.2d 845, 848 (1949); see also Appelbaum v. First Nat’l Bank of Birmingham, 235 Ala. 380, b179 So. 373 (1938); and Kelly v. Carmichael, supra.
“While the words ‘void’ and ‘voidable’ are often used interchangeably, there is an important distinction between those terms.
“When used in its correct sense, the term ‘voidable,’ with regard to a deed, has much the same meaning that it has in the law of contracts — that is, as meaning a writing that is both operative to convey the property and creative of contractual obligations unless and until set aside by the court. A voidable deed is capable of being either avoided or confirmed. The word ‘void,’ on the other hand, implies that the deed is invalid in *28 law for any purpose whatsoever, such as a deed to effectuate a prohibited transaction. A voidable deed must be attacked, if at all, directly, but a deed that is void may be collaterally attacked by anyone whose interest is adversely affected by it.”
23 Am.Jur.2d Deeds § 162 (2002)(emphasis added; footnotes omitted). “[T]he true distinction between void and voidable acts, orders, and .judgments, is, that the former can always be assailed in any proceeding, and the latter, only in a direct proceeding.” Alexander v. Nelson, 42 Ala. 462, 469 (1868).
The main opinion quotes a passage from ■ Kelly indicating that Carmichael, the foreclosing party in that case, had no right to foreclose because, at the time of the foreclosure, Carmichael had assigned the mortgage, the note, and the debt secured thereby to another. The main opinion, however, does not quote the following further passage from Kelly: “Such foreclosure on direct attack in a court of equity is irregular and voidable, if not void.” 217 Ala. at 537, 117 So. at 71 (emphasis added). Kelly is distinguishable because it arose from a complaint “to set aside an alleged irregular foreclosure of a mortgage, and, in the alternative, for redemption.” 217 Ala. at 536, 117 So. at 69. Kelly was a direct attack on a foreclosure.
To the extent that Bessie Sturdivant raised, in the ejectment action, issues regarding the invalidity of the foreclosure, Sturdivant’s defense constituted a collateral attack on the foreclosure. See Dewberry v. Bank of Standing Rock, 227 Ala. 484, 493, 150 So. 463, 470 (1933) (characterizing a prior decision as “a statutory action in the nature of ejectment — an indirect or collateral attack upon the foreclosure of real and personal property sold by a trustee, under the power [of sale in a deed of trust]” (some emphasis added)). The method of assailing a transaction, agreement, judgment, or (as here) a deed as void is to assert an affirmative defense. See Rule 8(c), Ala. R. Civ. P. (listing specific affirmative defenses and “any other matter constituting an avoidance”). “An affirmative defense is defined as ‘new matter which, assuming the complaint to be true, constitutes a defense to it.’ Black’s Law Dictionary (rev. 5th ed.1979).” Bechtel v. Crown Cent. Petroleum Corp. 451 So.2d 793, 795 (Ala.1984). Cf. Patterson v. Liberty Nat’l Life Ins. Co., 903 So.2d 769 (Ala.2004) (holding that insurer had waived the affirmative defense that policy was void because of insured’s misrepresentations in policy application); Palmer v. Resolution Trust Corp., 613 So.2d 373, 374 (Ala.1993) (raising the affirmative defense that note was void under the Alabama Mini-Code, § 15-19-1 et seq., Ala.Code 1975); Lowe v. Rogers, 72 So.3d 1234 (Ala.Civ.App.2011) (holding that party had waived the affirmative defense of res judi-cata to assert that previous judgment was void); Nichols v. Pate, 54 So.3d 398 (Ala.Civ.App.2010) (holding that seller had waived the affirmative defense that sale of property was void because it did not satisfy the Statute of Frauds); and Goza v. Goza, 470 So.2d 1262 (Ala.Civ.App.1985) (raising the affirmative defense that settlement agreement incorporated into divorce judgment was void for lack of mental capacity of the husband).
Notably, in both Hawkins v. LaSalle Bank, N.A., 24 So.3d 1143 (Ala.Civ.App.2009), and Berry v. Deutsche Bank National Trust Co., 57 So.3d 142 (Ala.Civ.App.2010) (overruling Hawkins), the ejectment defendant raised the affirmative defense that the foreclosure sale and deed were invalid. In 2009, this court held in Hawkins that, if the foreclosure sale and deed were invalid, then the purchaser had no standing to sue in ejectment. In 2010, *29 we concluded in Berry that an irregularity in the foreclosure proceeding, such as inadequacy of the price paid at a foreclosure sale, did not implicate the standing of the purchaser to bring an ejectment action; instead, we held, that alleged irregularity constituted an affirmative defense. Now, in 2011, the main opinion returns to the 2009 “standing” analysis that we rejected in 2010, based on the fact that the irregularity in the present case is more “fundamental” than the irregularities asserted in either Hawkins or Berry. I do not disagree that the irregularity discussed in the main opinion is “fundamental” and that, had it been properly raised as an affirmative defense, it would have resulted in the invalidation of the foreclosure sale. But the same is true of the irregularities present in Hawkins and Berry; upon proper proof of the irregularities asserted in those cases, the foreclosure sales would also have been invalidated.
By altering its analysis twice in three years, this court is contributing to the instability of the law concerning mortgage foreclosures, an area of practice that is already fraught with too much instability. I cannot account for the difference in the way the main opinion treats the defect in the foreclosure sale that forms the basis for the ejectment action in this case from the way this court treated the defect in Berry — both of which defects, if proved, would result in invalidation of the foreclosure sale — other than to surmise that we have been led astray by the standing analysis in Cadle, a decision that, as I have already stated, I think is misguided and should be overruled. But even accepting that analysis, Cadle is distinguishable on the basis that, at the commencement of the ejectment proceeding in Cadle, the ejectment plaintiff, unlike the ejectment plaintiff in this case, did not have prima facie legal title.
II.
Sturdivant waived the argument made the basis of the main opinion’s decision— that BAC, at the time it began the foreclosure proceedings^ was not the assignee of the mortgage — by failing to present that argument to the trial court. To be sure, Sturdivant’s amended answer asserted the affirmative defenses of “defective notice, defective sale, and wrongful foreclosure.” But at two points in the proceeding, Stur-divant specified in what respect she claimed that the foreclosure was wrongful, and at both points she failed to argue the issue she presents for the first time on appeal — that the foreclosure sale was invalid because BAC had not been assigned the mortgage when it initiated the foreclosure proceedings. First, in answer to BAC’s interrogatory number 6, “Please state in detail the factual support for th[e] conclusion that [BAC] ‘is without legal title to the property due to defective notice, defective sale, and wrongful foreclosure,’ ” Sturdivant stated:
“During the course of negotiations with [BAC] for a modification of my home loan, [BAC] was simultaneously proceeding with foreclosure on the same property. Although [BAC] was in the process of foreclosing on my home, they misrepresented that they were working with me in an effort to bring my account current and allow me to remain in my home. The notice was defective as the first and only notice I received was dated December 4, 2009, after my home had already been sold.”
Second, in her response to BAC’s summary-judgment motion, Sturdivant argued that the foreclosure was wrongful because, she said, BAC had led her to believe that it was working with her, through a loss-mitigation program, to help her keep her home when, she alleged, BAC had failed to follow the federal Department of Housing *30 and Urban Development (“HUD”) regulations regarding loss mitigation.
In Cooper v. Federal National Mortgage Ass’n, 96 So.3d 102 (Ala.Civ.App.2011), this court was presented with the argument that wrongful foreclosure by the plaintiff warranted a judgment for the defendant in ejectment. The defendant specifically alleged that the foreclosure was wrongful because “(1) the lender had failed to give her the notice of default required by Paragraph 9 of the mortgage and (2) the foreclosure notice published in the newspaper stated that the foreclosure sale would be held at the Jefferson County Courthouse in Birmingham rather than the Jefferson County Courthouse in Bessemer.” 96 So.3d at 104. This court addressed those two issues and found them to be without merit. Here, this court is being asked to address an issue, and to reverse on the basis of an argument, that was never presented to the trial court solely because the issue falls under the general rubric of “wrongful foreclosure.” .
In Powell v. Phenix Federal Savings & Loan Ass’n, 434 So.2d 247 (Ala.1983), the mortgagors filed an action to enjoin a foreclosure resulting from the enforcement of a due-on-sale clause after they sold part of their property in order to keep their house. The mortgagee argued, among other things, that it had not consented to the sale and had not waived its right to accelerate the amount due under the mortgage. The trial court agreed and refused to enjoin the foreclosure on the authority of Tierce v. APS Co., 382 So.2d 485, 486 (Ala.1979) (reversing the trial court’s order granting an injunction against foreclosure and holding that the “determinative issue” was “whether a ‘due on sale’ clause is per se invalid, unless a separate consideration has been given for it, when the mortgagee’s primary purpose for accelerating payment is to obtain a higher interest rate”). On appeal, the mortgagee, perhaps recognizing that Tierce allowed an inquiry into its “primary purpose for accelerating payment,” id., argued for the first time that federal law preempted any Alabama law limiting the enforceability of due-on-sale clauses. The supreme court declined to consider that argument because it was an affirmative defense that had not been argued in the trial court. Powell, 434 So.2d at 251.
I would affirm the judgment because the late-assignment issue was not presented to the trial court. I would also reject Sturdi-vant’s argument that she was entitled to raise, in defense of an ejectment action, that BAC failed to follow HUD regulations regarding loss mitigation. Sturdivant cites a number of decisions from other jurisdictions indicating that the failure to explore loss-mitigation options before foreclosure is a defense to a foreclosure action. The decisions do, in fact, make that statement, but it is in the context of judicial foreclosure actions, not nonjudicial foreclosure actions. See, e.g., Federal Land Bank of St. Paul v. Overboe, 404 N.W.2d 445, 449 (N.D.1987) (in which the Federal Land Bank appealed from a judgment denying it the right to foreclose). Cf. Ala.Code 1975, § 35-10-3, which provides:
“If no power of sale is contained in a mortgage or deed of trust, the grantee or any assignee thereof, at his option, after condition broken, may foreclose same either in a court having jurisdiction of the subject matter, or by selling for cash at the courthouse door of the county where the property is situated, to the highest bidder, the lands embraced in said mortgage or deed of trust, after notice of the time, place, terms and purpose of such sale has been given by four consecutive weekly insertions of such notice in some newspaper published in the county wherein said lands, or a portion thereof are situated.”
*31 (Emphasis added.) The emphasized portion of § 35-10-8 provides for a judicial foreclosure when the mortgage instrument itself does not provide for a power of sale. An ejectment action following a foreclosure sale is not a judicial foreclosure action. In my judgment, Sturdivant waived the loss-mitigation issue by failing to seek an injunction (or other equitable relief) to halt the foreclosure sale before it occurred or to file an action to set aside the foreclosure sale after it occurred.