BRYAN, Judge.
Edith Cooper (“Edith”) appeals from a summary judgment in favor of the Federal National Mortgage Association (“Fannie Mae”) in an ejectment action. We affirm.
On November 24, 2003, Edith’s father, Mason Dee Cooper (“Mason”), a widower who owned a house located on Dartmouth Avenue in Bessemer (“the house”), mortgaged the house to Wells Fargo Home Mortgage, Inc. Mason was the sole owner of the house when he executed the mortgage, and he was the only person named as a “Borrower” in the mortgage. Subsequent to the execution of the mortgage, Wells Fargo Bank, N.A. (“the lender”), became the successor by merger to Wells Fargo Home Mortgage, Inc.
The mortgage is a reverse mortgage. Reverse mortgages are designed to enable elderly homeowners to convert the equity in their homes to monthly streams of income or lines of credit. See U.S. Department of Housing and Urban Development, Home Equity Conversion Mortgage Handbook, Dir. No. 4235.1 REV-1 (Nov. 18, 1994) (“HUD Handbook”) at ch. 1-2. “Unlike a traditional ‘forward’ residential mortgage, which is repaid in periodic payments, a reverse mortgage is repaid in one payment, after the death of the borrower, or when the borrower no longer occupies the property as a principal residence.” HUD Handbook at ch. 1-3B. Consequently, Paragraph 9 of the mortgage provided:
“(a) ... Lender may require immediate payment in full of all sums secured by this [mortgage] if:
“(i) A Borrower dies and the [house] is not the principal residence of at least one surviving Borrower; or
“(ii) All of a Borrower’s title in the [house] ... is sold or otherwise transferred .... ”
Although the mortgage required the lender to give Mason notice of default if his title in the house were sold or otherwise transferred, it did not require the lender to give anyone notice of default if Mason died and the house was no longer the principal residence of at least one surviving borrower.
On April 10, 2008, Mason executed a quitclaim deed with respect to the house, which named Edith, who is his sole heir, as the grantee. However, Mason continued to live in the house until he died on May 6, 2008. After Mason’s death, Edith began living in the house.
On January 9, 2009, the lender held a foreclosure sale at the Jefferson County Courthouse in Birmingham. Fannie Mae was the highest bidder at the foreclosure sale, and the auctioneer who conducted the sale executed a foreclosure deed conveying the house to Fannie Mae.
*104 On April 2, 2009, Fannie Mae sued Mason, stating a claim of ejectment and seeking possession of the house. Subsequently, Fannie Mae amended its complaint to add Edith as an additional defendant. Answering, Edith denied the allegations of the complaint and, as affirmative defenses, asserted that Fannie Mae was not entitled to possession of the house because it did not own legal title to the house because of “defective notice,” “defective sale,” and “wrongful foreclosure.”
Fannie Mae moved for a summary judgment on the ground that it owned legal title to the house by virtue of the foreclosure deed. Opposing the summary-judgment motion, Edith asserted, among other things, that Fannie Mae was not entitled to possession of the house because, she said, the foreclosure was wrongful because, she said, (1) the lender had failed to give her the notice of default required by Paragraph 9 of the mortgage and (2) the foreclosure notice published in the newspaper stated that the foreclosure sale would be held at the Jefferson County Courthouse in Birmingham rather than the Jefferson County Courthouse in Bessemer. In addition, she asserted that Fannie Mae was not entitled to a summary judgment because, she said, a genuine issue of material fact existed regarding whether Fannie Mae was entitled to possession of the house.
Following a hearing, the trial court entered a summary judgment in favor of Fannie Mae with respect to its claim against Edith and dismissed the claim against Mason. Thereafter, Edith moved to vacate the judgment, and the trial court denied that motion. Edith then timely appealed to this court. Due to lack of jurisdiction, we transferred the appeal to the supreme court, which transferred the appeal back to this court pursuant to § 12-2-7(6), Ala.Code 1975.
“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ ‘We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co. [v. DPF Architects, P.C.], 792 So.2d [369] at 372 [ (Ala.2001) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).
Edith first argues that the trial court erred in entering a summary judgment in favor of Fannie Mae because, she says, the trial court held that she lacked standing to challenge the propriety of the foreclosure sale. First, we note that the trial court did not hold that she lacked standing to challenge the propriety of the foreclosure sale; rather, the trial court held that, because she was not a party to the mortgage, the mortgage did not require the lender to send her the individual notice of the foreclosure sale ■ that the mortgage required the lender to send a borrower who was a *105 party to the mortgage. In pertinent part, the judgment of the trial court stated:
“4. The Court does not find persuasive the arguments of [Edith] that [the lender] did not comply with all requirements of the Mortgage in conducing the foreclosure sale. It appears to the Court that [Fannie Mae] has produced sufficient evidence to prove that all proper notices were provided as required by the Mortgage.... [Edith] was not a party to the Mortgage, or underlying promissory note, but only presents herself before this court as an heir to the mortgagee, who is now deceased. According to the terms of the Mortgage, [Edith] therefore did not have any right to notice under the Mortgage that the sale was about to take place. (Mortgage at [Paragraphs] 16, 20.) The foreclosure sale was properly noticed in a newspaper of general circulation in Jefferson County, Alabama. Constantine v. First Alabama Bank of Birmingham, 465 So.2d 419, 422 (Ala.Civ.App.1984) (It has been held that publication of a foreclosure notice in [the Alabama Messenger] is valid.’)- All proper notices having been given, the sale was proper and conducted in accordance with the terms of the Mortgage.”
(Emphasis added.)
Second, we find no error in the trial court’s holding that, because Edith was not a party to the mortgage, the mortgage did not require the lender to send her the individual notice of the foreclosure sale that the mortgage required the lender to send a borrower who was a party to the mortgage. In pertinent part, Paragraph 20 of the mortgage provides that, “[i]f Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Paragraph 16.” It is undisputed that Edith was not named as a borrower in the mortgage. Accordingly, we find no merit in Edith’s first argument.
Edith also argues that the trial court erred in entering a summary judgment in favor of Fannie Mae because, she says, Fannie Mae failed to prove that the lender gave either Mason’s estate or Edith notice of Mason’s default as required by Paragraph 9 of the mortgage. Fannie Mae contends that, before invoking its power of sale, the lender properly delivered a letter dated October 8, 2008 (“the October 3 letter”), to the house notifying Mason’s estate that Mason was in default because he had died, which had resulted in the house not being the principal residence of at least one borrower. Edith contends that the October 8 letter was not delivered to the house. However, Fannie Mae was entitled to a summary judgment regardless of whether the lender delivered the October 3 letter to the house because (1) the default upon which the lender based its acceleration of the debt and its invoking of the power of sale was Mason’s death, which resulted in the house not being the principal residence of at least one borrower and (2) Paragraph 9 of the mortgage does not require the lender to give the borrower notice of such a default. Paragraph 9(a)(i) of the mortgage provides that the lender could require immediate payment of all sums secured by the mortgage if “[a] Borrower dies and the [house] is not the principal residence of at least one surviving Borrower.” However, Paragraph 9(d) of the mortgage does not require the lender to give the borrower notice of a default under Paragraph 9(a)(i). Paragraph 9(d), which states in pertinent part that “Lender shall notify the ... Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii).... ” (emphasis added), requires the lender to give the borrower notice of a default under Paragraph 9(a) only if the default was *106 under Paragraph 9(a) (ii).[1] Although Edith contends that the October 3 letter was not delivered to the house, she does not contend that it was not written. In pertinent part, the October 3 letter states:
“Our records indicate that the reverse mortgage loan referenced above is in default. Unless the default is cured within 30 days from the date of this notice, it will become necessary to accelerate the Mortgage Note and pursue the remedies provided for in the Mortgage....
“The reason the referenced reverse mortgage is in default is due to the death of all named mortgagors on the Note and Mortgage....”
(Emphasis added.)
Accordingly, because the default upon which the lender based its acceleration of the mortgage and its invoking of the power of sale was Mason’s death, the lender was not obligated to give Mason’s estate notice of that default pursuant to Paragraph 9, and, therefore, Fannie Mae was entitled to a summary judgment regardless of whether the lender delivered the October 3 letter to the house.
Edith next argues that Fannie Mae failed to prove that the October 3 letter was delivered to the house. However, this argument has no merit because, as explained above, Fannie Mae was entitled to a summary judgment regardless of whether the October 3 letter was delivered to the house because (1) the lender based its acceleration of the mortgage and its invoking of the power of sale on Mason’s death, which resulted in the house not being the principal residence of at least one borrower, and (2) Paragraph 9 of the mortgage did not require the lender to give the borrower notice of such a default.
Edith also argues that the trial court erred in entering a summary judgment in favor of Fannie Mae because, she says, the foreclosure sale was held at the Jefferson County Courthouse in Birmingham rather than the Jefferson County Courthouse in Bessemer. She argues that, because the house was located in the Bessemer Division of Jefferson County rather than the Birmingham Division, the foreclosure sale had to be held at the Jefferson County Courthouse in Bessemer rather than the Jefferson County Courthouse in Birmingham. Rejecting that argument, the trial court stated in its judgment:
“5. [Edith] has also argued that the foreclosure sale was improper because it took place at the Birmingham Courthouse when the [house] is located in Bessemer. Pursuant to paragraph 20 of the Mortgage, if the Lender invokes the power of sale, ‘Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in JEFFERSON County, Alabama and thereupon shall sell the [house] to the highest bidder at public auction at the front door of the County Courthouse of this County.’ The lender in this case conducted the foreclosure sale on January 9, 2009, at the Jefferson County Courthouse in Birmingham, which is exactly where the lender advertised the sale to take place.
“6. [Edith] did not cite any cases in her brief on this issue, but at the oral argument on [Fannie Mae’s] motion [Edith] invoked those cases which hold that the Bessemer Cutoff is to be considered a separate jurisdiction for pur-
*107 poses of determining where to file a lawsuit in the circuit court. The Court does not find those cases controlling or even persuasive with regard to the issue before the Court, which does not concern the filing of a judicial action, but instead concerns only the exercise of a non-judicial power of sale given by the mortgagor to the mortgagee in the mortgage. Instead, the Court finds controlling the case of Duncan v. Rudulph, [245 Ala. 175, 176,] 16 So.2d 313, 313 (Ala.1944) (quoting with approval Hall v. Metropolitan Life Ins. Co., [225 Ala. 455, 456-57,] 143 So. 452, 453 (Ala.1932)). The Duncan case does concern the Bessemer Cutoff and specifically addresses whether a sheriffs sale conducted in Birmingham could validly convey Bessemer real property. The only difference between the Duncan case and the present action is that the sale complained of here is not a sheriffs sale, but is a non-judicial foreclosure sale. Regardless, the reasoning of Duncan remains the same; the legislature created the Cutoff to address the holding of Circuit Court in this division and did not address sheriffs sales, foreclosure sales, or other non-judicial acts. Indeed, at least one of the cases relied upon by the Duncan Court, Hall v. Metropolitan Life Ins. Co., [225 Ala. 455, 456-57,] 143 So. 452, 453 (Ala.1932), dealt directly [with] the question before the Court: When a non-judicial foreclosure sale is to be held in a divided county (i.e. a county that has two courthouses), at which courthouse should the foreclosure sale be held?
“7. The Hall case holds that ‘where the mortgage stipulates the sale shall be in front of the courthouse of the county, a sate in front of either courthouse in a county having two courthouses is a compliance with such stipulation, the notice designating at which courthouse the sale will be made.’ Hall v. Metropolitan Life Ins. Co., [225 Ala. 455, 456-57,] 143 So. 452, 453 (Ala.1932) (citing Anniston Pipe Works v. Williams, [106 Ala. 324,] 18 So. 111 (Ala.1895)) (emphasis added here). The mortgage in the present case provided that the sale need only be conducted in this county, meaning Jefferson County. Therefore, because the foreclosure sale notice is consistent with the foreclosure sale being conducted at the Birmingham Division of the Jefferson County Courthouse, the lender properly noticed and conducted the foreclosure sale at the Courthouse in Jefferson County, consistent with the Mortgage and the above cases. See Hall, [225 Ala. 455, 456-57,] 143 So. at 453; Duncan, [245 Ala. at 176-77,] 16 So.2d at 313-14.”
We agree with the trial court’s analysis; therefore, we hold that, given the facts of the present case, the trial court did not err in concluding that the foreclosure sale was not invalid due to its being conducted at the Jefferson County Courthouse in Birmingham rather than the Jefferson County Courthouse in Bessemer.
Finally, Edith argues that the trial court erred in entering a summary judgment in favor of Fannie Mae because, she says, the evidence was in conflict regarding whether the October 3 letter was delivered to the house. However, this argument has no merit because, as explained above, Fannie Mae was entitled to a summary judgment regardless of whether the October 3 letter was delivered to the house because (1) the lender based its acceleration of the mortgage and its invoking of the power of sale on Mason’s death, which resulted in the house not being the principal residence of at least one borrower, and (2) Paragraph 9 of the mortgage did not require the lender to give the borrower notice of such a default.
*108 Because we find no merit in any of Edith’s arguments, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., concurs in the result, without writing.

. Paragraph 9(a)(ii) of the mortgage authorizes the lender to require immediate payment of all sums secured by the mortgage if "[a]ll of a Borrower’s title in the [house] ... is sold or otherwise transferred....”